406 F.2d 280
 UNITED STATES of America, for the Use and Benefit of the
TRANE COMPANY, Plaintiff-Appellant,
v.
RAYMAR CONTRACTING CORP., Benjamin Gelman, doing business as
Gelco Builders, Burjay Construction Corporation,
National Surety Corporation and the
HanoverInsurance Company,
Defendants-Appellees.
 No. 146, Docket 32279.
 United States Court of Appeals Second Circuit.
 Argued Oct. 30, 1968.
Decided Dec. 6, 1968, Certiorari Denied April 21, 1969, See
89 S.Ct. 1469.
 
 Irving Ronald Storch, New York City, (Schwartz, Weissberger, Leichter & Storch, New York City, Herman N. Schwartz, New York City, of counsel), for appellant Trane.
 Jack Hart, New York City (Hart & Hume, New York City), for appellees.
 Before LUMBARD, Chief Judge, KAUFMAN and HAYS, Circuit Judges.
 HAYS, Circuit Judge:
 
 
 1
 Use-plaintiff The Trane Company appeals from a judgment of the United States District Court for the Southern District of New York, LLOYD F. MacMAHON, Judge, dismissing its complaint against defendants Benjamin Gelman, doing business as Gelco Builders, Burjay Construction Corporation, National Surety Corporation and The Hanover Insurance Company after trial without a jury in a suit under the Miller Act, 40 U.S.C. 270a-270d (1964), against a prime contractor and its sureties. Defendant Raymar Contracting Corp. defaulted by failing to appear and plead.
 
 
 2
 In March, 1960 defendant Gelco-Burjay entered into a contract with the federal government for the installation of an air-conditioning system at the General Post Office and Morgan Annex in New York City. Defendant National Surety Corporation and the Massachusetts Bonding and Insurance Company (succeeded by defendant The Hanover Insurance Company), as co-sureties, furnished a Miller Act payment bond on behalf of Gelco-Burjay, as principal, pursuant to 40 U.S.C. 270a (1964). Gelco-Burjay made a subcontract with defendant Raymar to do a part of the work.
 
 
 3
 On April 19, 1960, Raymar, following negotiations with Jack Kliesrath, a salesman from Trane's New York City office, ordered certain air-conditioning equipment from Trane. Trane's principal place of business is in La Crosse, Wisconsin.
 
 
 4
 Trane delivered the equipment to the construction site by November 1, 1960 and thereafter billed Raymar for the agreed price of $39,703.05. In January, 1961 Trane gave Gelco-Burjay a timely Miller Act ninety-day notice, pursuant to 40 U.S.C. 270b(a) (1964), stating that this amount was due and owing from Raymar and that the last date of furnishing material was November 1, 1960.
 
 
 5
 In April, 1961 Raymar defaulted on its subcontract and Gelco-Burjay undertook completion of Raymar's work. Gelman, as agent for Gelco-Burjay, telephoned Trane's New York office to inquire about purchasing electric motors to be used with the air-conditioning equipment. Trane does not manufacture electric motors. Gelman was referred to Kliesrath, met with him and gave him an order for electric motors on April 28, 1961. The contract provided that the notes were to be paid for upon receipt and that payment was to be made to 'Long Island Trane Service Co.,' under which name Kliesrath had filed a certificate of doing business. Without notifying Trane, Kliesrath ordered the motors from General Dynamics Corporation.
 
 
 6
 The last delivery of the motors was made on July 10, 1961. Kliesrath sent invoices to Gelco-Burjay totalling $3,235.00 for the motors on July 18, 1961. The invoices were on a billhead which read: 'The Trane Company, Long Island Trane Service Co., 88 Cold Spring Road, Syosset, L.I., N.Y.'; they specifically directed that all checks should be made payable to the 'Long Island Trane Service Co.' Gelco-Burjay immediately made payment by checks payable to 'Long Island Trane Service Co.' Kliesrath endorsed the checks and converted the proceeds to his own use.
 
 
 7
 Trane commenced this Miller Act suit on June 26, 1962. It seeks to recover both the purchase price of the air-conditioning equipment and the purchase price of the motors.
 
 
 8
 Section 270b(b) of the Miller Act provides that a supplier may not commence a suit 'after the expiration of one year after the day on which the last of the labor was performed or material was supplied by him.' The commencement of this action was within one year after the last delivery by General Dynamics under the agreement for the purchase of the electric motors but more than one year after the last delivery by Trane of air-conditioning equipment.
 
 
 9
 Trane argues that its suit is timely because the two agreements constituted a single contract. The evidence does not support Trane's theory.
 
 
 10
 The first agreement was made between Raymar and Trane, the parties to the second agreement were Gelco-Burjay and Kliesrath, or Kliesrath's alter ego, Long Island Trane Service Co. Trane was not even aware of Gelco-Burjay's purchase of the motors until long after the transaction took place. Kliesrath purchased the motors from General Dynamics Corporation without notifying Trane. Trane cannot now, for the purpose of reviving its contract with Raymar, claim to have been a party to Gelco-Burjay's contract to purchase motors from General Dynamics.
 
 
 11
 Trane argues that it became a party to the purchase of the motors by ratifying Kliesrath's activity.
 
 
 12
 The motors were purchased from Kliesrath who ordered them from General Dynamics Corporation and gave no notice to Trane. Payment was made to Kliesrath through his 'Long Island Trane Service Co.,' as provided in his contract with Gelco-Burjay. Trane did not learn of the contract until months after both the last delivery of the motors and the making of payment for them. Trane thus had no connection with the motors contract and it cannot now 'ratify' a transaction to which it was an utter stranger.
 
 
 13
 In any event 'ratification' would not aid Trane in its suit under the motors contract because Trane could not ratify Kliesrath's other activity without also ratifying his receipt of payment.
 
 
 14
 Affirmed.
 
 IRVING R. KAUFMAN, Circuit Judge (dissenting):
 
 15
 Since I cannot agree with the majority's treatment of the ratification issue, which I believe determinative of the timeliness of Trane's claim for materials it supplied to Raymar, I must dissent. On the facts of this case, I am at a loss to understand the basis for the majority's conclusion that Trane was 'an utter stranger' to the contract between Gelco-Burjay and Kliesrath. I believe it is quite clear that Trane involved itself because Kliesrath was permitted by Trane to hold himself out as one empowered to act for it in dealing with Gelco-Burjay. Not only was Kliesrath Trane's salesman, but as my brother Hays states, Trane's New York office referred Gelco-Burjay's agent to Kliesrath when he inquired about the purchase of motors from Trane. In addition, it seems obvious that Kliesrath's purpose in creating the 'Long Island Trane Service Co.' and directing that payment for the motors be made to it was to create the impression that he was indeed effecting the transaction on behalf of a subsidiary or division of the Trane Company-- a notion reinforced by the circumstance that Trane did actually have a division similarly named 'The New York Trane Service Company.' And since Kliesrath had thus purported to act for Trane in selling the motors to Gelco-Burjay, and inasmuch as Trane clearly could have authorized the sale, as in the past it had authorized many similar transactions by its salesmen, I believe that Trane had the power to and did in fact and law ratify the sale by bringing this action for the purchase price of the motors.
 
 
 16
 I hasten to add that I agree that such ratification did not entitle Trane to recover the amount of its claim, since it would follow that in affirming the sale, it could not disavow the payments made by Gelco-Burjay to Kliesrath extinguishing the claim. A principal cannot selectively ratify only those portions of a transaction which would inure to its benefit. Restatement (Second) of Agency 96 (1957). In short, it cannot have its cake and eat it too. But, by its ratification in bringing the suit on its claim, Trane, as a consequence, became the supplier of the motors.
 
 
 17
 Under the Miller Act statute of limitations, 40 U.S.C. 270b(b), it seems clear to me that Trane's act of ratification fixed the date on which it supplied the last material for the government project as July 10, 1961, less than a year before it instituted this action. It should be noted also that the lower court determined that even if the ratification doctrine was applicable, Trane's claim for the materials it had supplied to Raymar was time barred because the judge interpreted the one year statute of limitations in 270b(b) as running from "the day on which the last of the material was supplied' on each separate contract.' I believe that this interpretation was erroneous and would lead to complexities which the history of the statute indicates Congress was trying to overcome. It is more in keeping with Congressional intent for us to construe the one-year limitation as running only once for each supplier on a job, commencing on the last day he supplied any material for work under the prime contract. See United States of America for Use and Benefit of General Electric Co. v. Southern Construction Co., Inc., 383 F.2d 135 (5th Cir. 1967), cert. denied 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968). Not only does this result better comport with the literal language of 270b(b), which contains no requirement that the time limit should run separately for each separate claim, as does 270b(a) (dealing with the 90 day notice provision), but I believe it wiser doctrine. Otherwise, a materialman would be required to bring multiple suits to recover for materials which he supplied to a single project under separate contracts spread over several years. Piecemeal litigation is a plight to be avoided wherever feasible.
 
 
 18
 Accordingly, I believe that since Trane ratified the motors sale, it supplied materials for the project within a year of bringing suit. The action for equipment furnished to Raymar is timely, and I would reverse on this claim.