ALASKA HELICOPTERS, INC., an Alaska Corporation, Plaintiff,

v.

WHIRL-WIDE HELICOPTERS, INC., a California Corporation, Defendant and Third Party Plaintiff.

UNITED STATES, Use of WHIRL-WIDE HELICOPTERS, INC., Defendant and Third Party Plaintiff,

v.

HOAK CONSTRUCTION COMPANY, an Iowa Corporation, Third Party Defendant,

and

Insurance Company of North America, a Pennsylvania Corporation, Third Party Defendant,

and

American Insurance Company, a New Jersey Corporation, Third Party Defendant.

Civ. No. A175–73.

United States District Court, D. Alaska.

Jan. 13, 1976.

Robert H. Reynolds, Anchorage, for plaintiff.

Keith A. Goltz of Cole, Hartig, Rhodes, Norman, Mahoney & Goltz, Anchorage, for defendants and third party plaintiff.

Kenneth R. Atkinson of Atkinson, Conway, Young, Bell & Gagnon, Anchorage, for third party defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

This cause comes before the court upon the motion of the third party defendants for summary judgment.

The instant action was initiated by Alaska Helicopters, Inc. (hereafter Alaska), to recover certain sums allegedly due it by Whirl-Wide Helicopters, Inc. (hereafter Whirl-Wide), for certain work performed on the Snettisham Line Project near Juneau, Alaska. Plaintiff's complaint primarily is based upon diversity of citizenship although such is not alleged. Plaintiff is granted leave to file a first amended complaint setting forth the jurisdictional basis of its action. That amendment shall be accomplished within ten days from the date of this order. The defendant, Whirl-Wide, joined as third parties Hoak Construction Company, the Insurance Company of North America, and the American Insurance Company (hereafter, respectively, Hoak, I.N.A. and American), alleging diversity, ancillary, and Miller Act, 40 U.S.C. § 270b(b), jurisdiction. The court sustained the filing of the third party complaint, over the third party defendants' objection, by order dated July 24, 1974. The third party complaint sets forth causes of action based both upon contract and the Miller Act, 40 U.S.C. § 270a et seq. The instant motion seeks to defeat the Miller Act claim and, in the process, attacks the underlying contract claims.

In a motion for summary judgment the court must determine whether a genuine issue of material fact exists and, if not, then viewing the evidence in the light most favorable to the party opposing the motion, and the inferences to be drawn therefrom, is the movant entitled to prevail as a matter of law? *Radobenko v. Automated Equipment Corporation*, 520 F.2d 540 (9th Cir. 1975). However, it bears emphasis that the issue of fact must be *genuine*. *Radobenko v. Automated Equipment Corporation*, supra, 520 F.2d 540, 544. Accordingly, while the court has read the depositions of Ronald A. Smith, Rex I. Bishopp, and Harry L. Hoak in their entirety, only the deposition of Smith will be considered for the purposes of establishing the facts upon which the instant motion is based.

Many of the facts and the inferences to be drawn from them are contested. Nevertheless, a brief summary of the facts, viewed in the light most favorable to Whirl-Wide and taken from the Smith deposition, may be beneficial.

On January 1, 1972 Whirl-Wide and Hoak entered into a contract whereby Whirl-Wide agreed to supply three helicopters to Hoak for use on the Snettisham Line Project in consideration of the lump sum of $600,000.00. Hoak was the general contractor on the Miller Act project with Whirl-Wide performing as a sub-contractor for Miller Act purposes. The contract was to terminate October 30, 1972. There was a major amendment to the contract dated September 19, 1972, whereby Whirl-Wide agreed to supply additional helicopters on a minimum guaranteed flight-hour basis. It was initially contemplated that the project would be completed during the 1972 construction season. However, because of certain unanticipated factors this proved impossible and thereafter, on April 2, 1973, Whirl-Wide and Hoak entered into a second contract for helicopter services covering the period from April 1, 1973, to December 31, 1973. This second contract was terminated by either the alleged assignment of May 14, 1973, the subsequent cancellation between Whirl-Wide and Hoak, or the impossibility of performance because of the illegal nature of the contract in view of the cease and desist order issued by the Alaska Transportation Commission. In any event, Whirl-Wide admits that it did not supply any services to the project after May 14, 1973, and that it did not have a contract with Hoak after May 14, 1973, since Smith, acting for Whirl-Wide, admits that Hoak agreed to pay Smith his commissions only if Alaska would so agree and it did not, at least in relation to the Hoak offer. *See* deposition of Ronald A. Smith pages 61–64 and page

79, lines 17–22. *See generally*, Smith deposition, page 38, lines 17–19, page 39, lines 1–14, page 48, lines 12–25, and page 49, lines 1–11. Subsequent to May 14, 1973, Alaska and Hoak entered into a contract to provide helicopter services so that the project could be completed.

Defendant-third party plaintiff, Whirl-Wide, contends that certain sums are owed to it by Hoak both on the 1972 and the 1973 contract. Whirl-Wide contends, as to the 1972 contract, that there was an underuse of one helicopter and an overuse of another. It appears that Whirl-Wide is maintaining that such uses of the aircraft violated the underlying agreement or concept upon which the entire 1972 contract was based. Additionally, Mr. Smith contends that certain oral assurances were made to him by Mr. Hoak at their Denver meeting in 1972. Insofar as the 1973 contract is concerned, it is apparently Whirl-Wide's contention that it had performed substantially all of the 1973 contract, Smith states 90%, prior to the cease and desist order of the Alaska Transportation Commission. While Whirl-Wide admits that it was paid for all sums owed on the 1973 contract through May 14, 1973, and that it had no contract with Hoak after that date, the defendant-third party plaintiff contends that Hoak owes it a commission (the difference between the price paid by Hoak for the services and that received by Alaska from Whirl-Wide under the original 1973 contracts or the difference between what Alaska received from Whirl-Wide under the original 1973 contract and the amount that Alaska received from Hoak under its subsequent contract with Hoak), on monies paid by Hoak to Alaska after May 14, 1973. The legal basis for such a claim is unclear, given Smith's testimony in his deposition. The court notes that it has only considered those parts of the Smith deposition that did not call for a legal conclusion on the part of the deponent.

The third party defendants contend that the 1972 claim is barred insofar as it seeks recovery on a Miller Act basis against the sureties since more than one year lapsed between the filing of the first amended third party complaint and the time that the last services were performed for the project under the 1972 contract. *See*, 40 U.S.C. § 270b(b). Additionally, the third party defendants contend that the 1973 claim is barred since that claim is grounded upon services performed subsequent to May 14, 1973. They allege that such a claim must be barred since Smith admits that he had no contract, express or implied, with the prime contractor, Hoak, after such date and accordingly the Miller Act claim is barred for failure to furnish the prime contractor with the mandatory notice required by 40 U.S.C. § 270b(a).

■ The court first will consider the 1972 contract. The first amended third party complaint, the one in which the Miller Act claim was first raised, was filed on April 26, 1974. This is more than one year after the last services were performed under the 1972 contract, October 30, 1972, being the date upon which the last services were performed, but less than one year after the last services were performed under the 1973 contract, that date being May 14, 1973, for the purposes of the instant motion. Thus the question presented is whether the time period established by 40 U.S.C. § 270b(b) begins to run from the date that the last services were rendered under each subcontract considered separately, or whether it suffices that suit is instituted within one year after the last services are rendered under the prime contract where the separate subcontracts are between the same parties and relate to the same subject matter. Surprisingly, few decisions exist on this question.

The only case which this court has found that directly considers the issue, and that is the dissent, is *United States ex rel. Trane Co. v. Raymar Contracting Corp.*, 406 F.2d 280. (2nd Cir. 1968). There Judge Kaufman states,

"It should be noted also that the lower court determined that even if the ratification doctrine was applicable, Trane's claim for the materials it had

supplied to Raymar was time barred because the judge interpreted the one year statute of limitations in § 270b(b) as running from ' "the day on which the last of the material was supplied" on each separate contract.' I believe that this interpretation was erroneous and would lead to complexities which the history of the statute indicates Congress was trying to overcome. It is more in keeping with Congressional intent for us to construe the one-year limitation as running only once for each supplier on a job, commencing on the last day he supplied any material for work under the prime contract. See *United States of America for Use and Benefit of General Electric Co. v. Southern Construction Co., Inc.*, 383 F.2d 135 (5th Cir. 1967), cert. denied 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968). Not only does this result better comport with the literal language of § 270b(b), which contains no requirement that the time limit should run separately for each separate claim, as does § 270b(a) (dealing with the 90 day notice provision), but I believe it wiser doctrine. Otherwise, a material-man would be required to bring multiple suits to recover for materials which he supplied to a single project under separate contracts spread over several years. Piecemeal litigation is a plight to be avoided wherever feasible."

*United States ex rel. Trane Co. v. Raymar Contracting Corp., supra*, 406 F.2d 280 at 283, *see*, 10 A.L.R.Fed. 553, 581 § 5[b]. Since this court is in complete agreement with Judge Kaufman's reasoning, the court finds that Whirl-Wide's 1972 claim was timely instituted for the purposes of 40 U.S.C. § 270b(b). Additionally, the court notes that the pragmatic considerations which support a strict interpretation of the ninety day notice requirement under 40 U.S.C. § 270b(a), *see, United States v. Thompson Construction Corp.*, 273 F.2d 873, 875 (2nd Cir. 1959) are absent in the section 270b(b) situation.

■ Whirl-Wide's 1973 claim is more troublesome. The court finds that Whirl-Wide's claims for the period after May 14, 1973, are barred against the sureties for failure to give the requisite ninety day notice as required by 40 U.S.C. § 270b(a). This is true since there was no contract between Hoak and Whirl-Wide after this date. Additionally, since there was no contract the court finds that Whirl-Wide's contract claim against Hoak is similarly barred.

■ As to the amounts claimed by Whirl-Wide for its performance prior to May 14, 1973, but unascertainable until the completion of the 1973 construction season, the court finds that Whirl-Wide cannot recover for such, as a matter of law, on a contract theory given the wording of the contract between Hoak and Whirl-Wide and given Smith's own statement of the facts. Nevertheless, the court will allow Whirl-Wide to amend its third party complaint, if it so desires, to set forth a claim for the 1973 services, performed prior to May 14, against Hoak and its sureties based upon a *quantum meruit* theory of recovery. *See, United States v. Algernon Blair, Inc.*, 479 F.2d 638 (4th Cir. 1973); *United States ex rel. Altman v. Young Lumber Company*, 376 F.Supp. 1290, 1298 (D.S.C. 1974). *See also, United States v. Western Casualty and Surety Co.*, 498 F.2d 335, 338 n. 4 (9th Cir. 1974); *Food Industries Research and Eng., Inc. v. State of Alaska*, 388 F.Supp. 342 (D.Alaska 1975). Any such amendment shall be filed within ten days from the date of this order.

Accordingly, it is ordered:

1. That third party defendants' motion for summary judgment is granted in part and denied in part in conformity herewith.

2. That plaintiff is granted leave to amend its complaint if done within ten days from the date of this order.

3. That defendant third party plaintiff is granted leave to amend its complaint if done within ten days from the date of this order.