# UNITED STATES of America, for the Use of GROTNES MACHINE WORKS, INC., Plaintiff,

v.

# HENRY B. BYORS & SON, INC. and Aetna Insurance Company, Defendants.

## No. CV 77–156.

United States District Court, D. New Hampshire.

June 27, 1978.

---

Orr & Reno by William L. Chapman, Concord, N. H., for Grotnes Machine Works, Inc.

Devine, Millimet, Stahl & Branch by Gregory D. Prymak, Manchester, N. H., for Henry B. Byors & Son, Inc.

REAL, District Judge, Sitting by Designation.

## OPINION

Defendant AETNA INSURANCE COMPANY (hereafter AETNA) moves for dismissal of Count II of its complaint adding a claim of liability for an additional piece of equipment.

## FACTS

The undisputed facts show that defendant HENRY B. BYORS & SON INC., (hereafter BYORS) contracted with the United States to do certain work at Pease Air Force Base, Portsmouth, New Hampshire.

Two (2) separate construction contracts were executed by the United States and BYORS. The first contract, and the subject of this motion, was a "Construct Wash Rack, Building 213," hereafter (Wash Rack Project). A second contract with the Government was for "Modification to Waste Treatment Facility, Pease Air Force Base, Portsmouth, New Hampshire" (hereafter Waste Treatment Facility).

Plaintiff GROTNES MACHINE WORKS, INC., (hereafter GROTNES), an equipment manufacturer provided defendant BYORS with two pieces of equipment, one necessary to the completion of each of the contracts between BYORS and the government.

For installation on the Wash Rack Project GROTNES shipped to BYORS a Hydro-Gard Model C–45 oil/water separator (hereafter C–45). Shipment of the last component of the C–45 was made November 21, 1974. The last work performed on the C–45 for installation on the Wash Rack Project was in June 1975.

On November 27, 1974 GROTNES shipped a Hydro-Gard Model C–100 oil/water separator (hereafter C–100) for use by BYORS in connection with the Waste Treatment Facility project. The last work done on the C–100 was within one year of August 19, 1977.

Requests for payment of the C–45 were made by GROTNES commencing in December 1974. On each occasion the request was met by BYORS with a uniform response.

Payment would be made when the contract obligations of the C–100 were completed. When demand for joint payment of the C–45 and C–100, after completion of work on the C–100, was made BYORS again put GROTNES off with the excuse that now payment would be made when payment was received from the government for successful completion of both projects. GROTNES refrained from bringing action on the C–45 until August 19, 1977 when it did so by amendment to the original complaint filed herein. The original complaint claiming payment for the C–100 only was filed May 16, 1977.

AETNA had issued payment bonds pursuant to the Miller Act for each of these projects. A payment bond was issued separately for each contract. AETNA now claims the GROTNES action upon the payment bond covering the C–45 purchase came too late, i. e. more than one year beyond the date of the last work on the C–45 installation. Since the period of limitations is concerned, a timetable of the respective dates may provide some understanding of the facts.

| | |
|---|---|
| April 15, 1974 | – issuance of bond on C–100 |
| June 6, 1974 | – issuance of bond on C–45 |
| November 21, 1974 | – shipment of last component of C–45 |
| November 27, 1974 | – shipment of C–100 |
| June 1975 | – last work on C–45 |
| December 1974 | – demand for payment on C–45 |
| July–Aug. 1977 | – last work on C–100 |
| May 16, 1977 | – complaint filed on bond covering C–100 |
| August 19, 1977 | – count II added on bond covering C–45 |

GROTNES claims that its Amendment of August 19, 1977 is timely because AETNA through the representations of BYORS concerning payment is now bound to respond upon its liability as though the C–100 and C–45 payment bonds covered a single joint project.

## THE ISSUE CONTROLLING DISMISSAL OF THE C–45 CLAIM AGAINST DEFENDANT AETNA

■ Does performance of the two separate agreements with a single defendant, if made within the one-year period of limitations of 40 U.S.C. § 270b(b), save an action upon one of the contracts where no labor has been performed or materials supplied within one year of the bringing of an action under the Miller Act.

40 U.S.C. § 270b(b) provides in pertinent part

. . . no such suit [on a bond] shall be commenced after the expiration of one year after the day on which the last of the labor was performed or material supplied by him.

Absent some countervailing consideration a cause of action upon a Miller Act bond lapses within one year after performance either by way of labor performed or material supplied by the beneficiary of the bond. Clearly then if GROTNES were suing on a single contract covering the C–45 its cause of action could not be brought against BYORS alone. Do the circumstances here, then, change the result?

Plaintiff urges upon the Court two cases in support of its position that the circumstance of two separate contracts ought to permit extension of the period of limitation until one year after performance of the last of the two contracts—at least as they are involved in this case.

*General Electric Co., v. Southern Construction Co.*, 383 F.2d 135 (5th Cir. 1967) is inapposite. The Court there was concerned with a single payment bond and had for decision only the question as stated

. . . Does the one year limitation period set out in 40 U.S.C. § 270b(b) begin to run against a materialman from the date of supplying the last material *for which claim is made*? (emphasis in the original) p. 136.

The logic of *General Electric* (supra) is as inescapable as its application to the present case. No subcontractor ought to be required to bring an action on each part of his performance of a *single* contract.

*United States ex rel. Trane Co. v. Raymar Contracting Corp.*, 406 F.2d 280 (2d Cir.

# 206

1968) is cited by plaintiff for Judge Kaufman's dissent. There Judge Kaufman's rationale is stated as

. . . I believe that this interpretation was erroneous and would lead to complexities which the history of the statute indicates Congress was trying to overcome. It is more in keeping with Congressional intent for us to construe the one-year limitation as running only once for each supplier on the job, commencing on the last day he supplied any material for work under the prime contract. See *United States of America for Use and Benefit of General Electric Co. v. Southern Construction Co., Inc.*, 383 F.2d 135 (5th Cir. 1967), cert denied 390 U.S. 955, 88 S.Ct. 1049, 19 L.Ed.2d 1148 (1968). Not only does this result better comport with the literal language of § 270b(a) (dealing with the 90 day notice provision), but I believe it wiser doctrine. Otherwise, a materialman would be required to bring multiple suits to recover for materials which he supplied to a single project under separate contracts spread over several years. Piecemeal litigation is a plight to be avoided wherever feasible.

No one can argue the policy considerations articulated by Judge Kaufman. The trouble here is that factually the policy cannot be implemented. *Trane* (supra) like *General Electric* (supra) concerned a *single* project. In the instant case although all the work was done at the single generalized location of the Pease Air Force Base there were *separate contracts for separate projects covered by separate payment bonds.* To apply Judge Kaufman's policy considerations to this case would completely distort the obligation of a surety. The only relationship to *Trane* (supra) is the unity of principal, surety and beneficiary in a single complaint. If it were otherwise would we not be compelled to ask then—why not disregard contractual arrangements and permit claims for any work performed or materials furnished by any subcontractor no matter where performed (location) so long as a single surety has issued payment bonds upon a single principal? The law does not exist, nor should it be created, to permit such a result.

Plaintiff's claim of estoppel against AETNA for the independent and unknown conduct of BYORS is adequately answered in *Reliance Insurance Co. v. Colbert*, 124 U.S. App.D.C. 339, 365 F.2d 530 (1966) and needs no elaboration here. The facts just do not create an estoppel against action.

The motion is granted. Count II of plaintiff's complaint is dismissed.