ANSTEAD, Judge.
This is an appeal from a final judgment on a claim made by a subcontractor against a payment bond on a school improvement project. Appellants, the contractor and its surety, claim that the appellee, Knight Erection & Fabrication Inc., did not timely give notice to the contractor of its intention to look to the bond as security, and also was allowed to recover damages not covered by the bond. We affirm in part and reverse in part.
On July 3, 1986, D.I.C. and the School Board Of Martin County entered into a contract for the construction of J.D. Parker Elementary School. D.I.C. and Hartford entered into contracts for Payment and Performance Bonds in reference to the construction contract. Subsequently, D.I.C. entered into a purchase order contract with Woven Wire Products of Pittsburgh, a subcontractor, for the supply and installation of all structural steel, joists, and metal deck work for the project. Later in July, Woven Wire entered into a contract with Knight, a sub-subcontractor, to provide labor and materials on the cafeteria portion of the construction project. Knight worked on and completed the cafeteria work in a period of three days, from August 15 to 17, 1986. However, Knight did not receive full payment on the cafeteria portion of the project until October 10, 1986.
Woven Wire subsequently hired Knight to provide labor and materials on Building 10 of the construction project. The initial discussions about Knight doing the Building 10 work took .place in August when Knight’s president, Don Williams, attended a high school reunion in Pittsburgh. The negotiation resulted in a purchase order on September 23, 1986 from Woven Wire to Knight in regard to Building 10. Knight commenced work on Building 10 on September 30, 1986. The foreman of both jobs testified that the work on the cafeteria portion was entirely different from the work on Building 10. Williams testified that he was not aware that Knight might be doing further work on the project when the cafeteria work was agreed to and done.
On October 18, 1986, Knight sent to D.I.C. and Hartford, by certified mail, preliminary notice of its intention to look to the bonds for the payment of its claims for work done on the project. D.I.C. received the notice on November 4, 1986. Knight expected the job to take about two weeks, but instead it took about two and one-half months, partly due to the fact that Woven Wire delivered materials to the site late. Subsequently, Knight gave notice that it had completed its work and had not been paid. When payment was refused by appellants, Knight sued for all work and materials used on the project including some expenses incurred because of the delay of others. After a trial the court awarded Knight all of its claimed damages.
NOTICE
D.I.C. and Hartford claim that Knight’s notice of October 18 was untimely because it was more than forty-five days from the first day of performance on its contract with Woven Wire as required by § 255.05(2), Florida Statutes which provides:
*979 A claimant, except a laborer, who is not in privity with the contractor and who has not received payment for his labor, materials or supplies shall, within ⅛5 days after beginning to furnish labor, materials, or supplies for the prosecution of the work, furnish the contractor with a notice that he intends to look to the bond for protection. A claimant who is not in privity with the contractor and who has not received payment for his labor, materials, or supplies shall, within 90 days after performance of the labor or after complete delivery of the materials or supplies, deliver to the contractor and to the surety written notice of the performance of the labor or delivery of the materials or supplies and of the nonpayment. No action for the labor, materials, or supplies may be instituted against the contractor or the surety unless both notices have been given. No action shall be instituted against the contractor or the surety on the bond after 1 year from the performance of the labor or completion of delivery of the materials or supplies.
(Emphasis supplied).
The requirement that notice be given within the specified forty-five day period is a condition precedent to the maintenance of an action under § 255.05. W.G. Mills, Inc. v.M & MA Corp., 465 So.2d 1388 (Fla. 2d DCA 1985).
The appellants claim that the forty-five day period should be measured from August 15, 1986, when Knight commenced work on the cafeteria portion of the project. Knight asserts, however, that the forty-five day period began to run no earlier than September 23, 1986 when Woven Wire gave it a purchase order on Building 10. We must determine whether § 255.05 contemplates the 45 day period to commence running when any work is done by a claimant on the project, or whether it permits the notice time clock to start over if a legitimate second contract is made.
Neither party has cited a Florida decision on point. The appellants make a strong argument that the statute should be strictly construed to require notice within 45 days from the first day that the subcontractor or supplier does anything on the project, regardless of whether the initial contract was limited and no further work contemplated. They rely on the plain language of the statute, and the ease of application of such an interpretation. While we believe this to be a possible construction of the statute, we reject it as unduly harsh, and inconsistent with the language and spirit of the statute.
The appellee claims it should be in no worse a position than another subcontractor who may have been awarded the Building 10 job in September, and cites numerous cases decided under the federal Miller Act that have recognized that more than one contract may be used to measure notice requirements.[1] See also Arabi Homes, Inc. v. Bachrach, 446 So.2d 725 (Fla. 2d DCA 1984). Since § 255.05 was patterned after the Miller Act, we agree those decisions are persuasive authority to support the trial court’s decision here. See City of Fort Lauderdale v. Hardrives Co., 167 So.2d 339 (Fla. 2d DCA 1964).
Section 255.05 speaks of “the prosecution of the work”. We believe this refers to the work contemplated to be done by the subcontractor at that time. The statute appears to contemplate the usual situation where a subcontractor or supplier is engaged in a single agreement to do work on a project. We do not believe this bars a subsequent claim, or notice thereof, for work done under a genuine subsequent *980 agreement to do work not anticipated to be done initially. We also believe that trial courts are capable of distinguishing situations where separate contracts are claimed as a mere ruse to justify late notices. Such claims should be promptly rejected. Given the above facts, we do not believe that the trial court erred in finding that the two jobs which Knight performed on the project were based on genuine separate contracts. Here, the evidence that the job on Building 10 was done at a different time and involved different work than the job on the cafeteria permitted the trial court to determine whether the jobs were based on a single contract or separate contracts.
As the court pointed out in Noland Co. v. Allied Contractors, Inc., 273 F.2d 917 (4th Cir.1959), any ambiguity in the facts relating to notice provisions should be resolved in support of the main object of the law, which is to protect those whose labor and materials are entered into the prosecution of work. See also City of Fort Lauderdale v. Hardrives Co., 167 So.2d at 341. Under the construction advanced by the appellants, a supplier who delivered materials and was paid the same day, would be expected to give notice to cover potential future claims, even if he was immediately paid in full and had no reason to expect future orders. Otherwise, if he were given other orders more.than 45 days later, he would automatically be barred from relying on the bond because of his earlier work on the project. We do not believe such results were intended by the legislature.
The instant case is distinguishable from Pilot Elec. Const. Co. v. Waters, 384 So.2d 61 (Fla. 1st DCA 1980), relied upon by the appellants. The court in Waters held that an oral modification of a written contract after 70% of the work on the contract had been performed did not start a new forty-five day period for purposes of Section 255.05. This case does not involve a modification relating to a single job before its completion. Instead, it involves a contract, and completion thereof for one job, and a subsequent contract for another job.
DAMAGES
The appellants also contend that ap-pellee’s damages should be limited to the contract amount, and that the appellee is not entitled to recover on the bond for any expenses due to delay. The contract price * for the Building 10 job was $34,459.00. In addition to that amount Knight sought damages for additional work requested by D.I.C. and expenses due to delays in the job which it did not cause. The evidence showed that Woven Wire was late in getting the joists to the site, and as a result, the architect issued change orders. D.I. C.’s foreman, testified that Knight was ready to proceed, but the job was delayed, on more than one occasion. He also testified that he submitted “Job Work Orders” to D.I.C. daily, and that some of them reflected extra charges by Knight for its costs due to the delays. However, he stated that his signature on the orders did not indicate an acceptance by D.I.C. of the charges, but only indicates his witnessing of their submission.
The trial court awarded Knight a total of $49,839.77 with interest. It based the award on Knight’s accounting which represented the amounts it charged on the work orders, and included charges for the delays. The appellants argue that the court erred in awarding the additional charges because recovery pursuant to Section 255.05 is limited to the amount contracted for in the prosecution of work.
In W.S.A. Inc. v. Stratton, 680 F.Supp. 375 (S.D.Fla.1988), the court examined the language of Section 255.05 and of the payment bond to determine whether damages stemming from a delay in a construction project were recoverable. It stated that Section 255.05 only held a surety liable for “labor, materials, and supplies”. It found that the scope of the surety’s liability, therefore, did not include damages stemming from the delay. The court in Strat-ton distinguished its facts from the facts of Travelers Indem. Co. v. Housing Auth. of Miami, 256 So.2d 230 (Fla. 3d DCA 1972) where the payment bond itself contained broader language than Section 255.-05. In Travelers, the court stated that a *981 surety is bound by any terms of its bond that extend beyond the statutory requirements.
The payment bond in the instant case contains the following “Condition of Bond”:
“1. Promptly makes payments to all claimants, as defined in 255.05(1), Florida Statutes, supplying Principal with labor, materials, or supplies, used directly by Principal in the prosecution of the work provided for in the contract ... the contract being made a part of this bond by reference.”
(emphasis added).
The contract, incorporated by reference into the terms of the payment bond refers to the same scope of work as the bond, with the language “labor, implements, machinery, equipment, tools, apparatus, materials, means of transportation, and performance of all work shown on the drawings, and described in the specifications
The language of the contract payment bond is no broader than that of § 255.05. In fact, the language of the bond specifically limits it to the coverage of that section. Like in Stratton, then, the payment bond does not cover damages stemming from the delays. The trial court erred in awarding Knight the additional costs for delays outside the contract price of $34,459.00, quoted in the purchase order.
For the reasons enunciated above we affirm in part and reverse in part and remand this cause with specific directions to the trial court to enter a final judgment deleting any amounts for damages for delay. The trial court may conduct additional hearings and receive additional evidence at its discretion, or it may determine the cause on the present record.
GUNTHER and WARNER, JJ., concur.

. United States ex rel. General Cable Corporation v. Power Engineering Company, 421 F.2d 1355 (5th Cir.1970); United States ex rel. Trane Co. v. Raymar Contracting Corp., 406 F.2d 280 (2d Cir.1968); Noland Company v. Allied Contractors, Inc., 273 F.2d 917 (4th Cir.1959); United States ex rel. J.A. Edwards v. Peter Reiss Construction Co., 273 F.2d 880 (2d Cir.1959); United States ex rel. Grotnes Machine Works, Inc. v. Henry B. Byors and Son, Inc., 454 F.Supp. 203 (D.N.H.1978); Alaska Helicopters, Inc. v. Whirlwide Helicopters, Inc., 406 F.Supp. 1008 (D.Alaska 1976); United States ex rel. Airstream Products Co., Inc. v. Essential Construction Co., Inc., 363 F.Supp. 681 (S.D.N.Y.1973); United States ex rel. I. Burack Company, Inc. v. Sovereign Construction Company, Ltd., 338 F.Supp. 657 (S.D.N.Y.1972).