The UNITED STATES of America, for the use and benefit of GE Supply, a division of General Electric Company, Plaintiff,

v.

G & C ENTERPRISES, INC. and The American Insurance Company, Defendants.

No. Civ. 97–1892 (JAF).

United States District Court, D. Puerto Rico.

Nov. 18, 1998.

**50**

Jose A. Sanchez–Alvarez, Melissa Reyes–Perez, San Juan, PR, for Plaintiff.

Federico Calaf–Legrand, Reichard & Calaf, San Juan, PR, Harry R. Blackburn, Philadelphia, PA, Paul T. De Vlieger, Philadelphia, PA, for Defendants.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, The United States of America, for the use and benefit of GE Supply, a division of General Electric Company ("GE Supply"), has brought this action against Defendants, G & C Enterprises, Inc. ("G & C") and the American Insurance Company ("American"), pursuant to the Miller Act, 40 U.S.C. § 270a, for an alleged breach of contract. We granted Plaintiff's motion for summary judgment on September 10, 1998. On October 6, 1998, we granted Defendants' motion for reconsideration. We now have before us Plaintiff's motion for summary judgment and Defendants' cross-motion for summary judgment.

### I.

### *Background*

G & C entered into a contract with the United States to perform services as an electrical contractor on a project known as the United States Naval Station Commissary Facility in Puerto Rico (the "Project"). American, as surety, issued a payment bond on behalf of G & C in connection with the Project. GE Supply, and its affiliate, GE Caribe, provided goods and materials to G & C in connection with the Project.

Defendants allege that during the course of the Project, G & C entered into "a series of contracts" with GE Supply for the procurement of certain materials, and that GE Supply issued invoices to G & C for those materials. Defendants argue that the terms and conditions of the invoices which GE Supply issued stated that "[e]ach shipment or delivery shall be deemed to have been sold under a separate and independent contract."

GE ·Supply alleges each original invoice which it issued to G & C stated that "[e]ach invoice shall be due and payable within its own terms." GE Supply states that the clause "[e]ach shipment or delivery shall be deemed to have been sold under a separate and independent contract" is from an older version of the invoice and that it did not use this older invoice in the sale of materials to G & C. GE Supply states that it mistakenly provided its counsel with the older version of the invoice, and that counsel erred in attaching the older version as Exhibit A of the Complaint. GE Supply states the new invoice which it used for all supply shipments to G & C specifically stated that "[e]ach invoice shall be due and payable within its own terms." GE Supply maintains that it changed its invoices to remove the old term and add this new term prior to conducting business with G & C. GE Supply explains

that the old term stating that "[e]ach shipment or delivery shall be deemed to have been sold under a separate and independent contract" was actually printed on the invoices from GE Caribe, not GE Supply.

Neither party disputes that G & C accepted goods from GE Supply and that GE Supply continued to make deliveries to G & C despite the fact that G & C had not made payment in full. There is no factual dispute that GE Supply's last delivery to G & C was on July 2, 1996. Furthermore, there is no factual dispute that GE Supply notified American of G & C's non-payment within ninety days of its last delivery, and that American refused to pay GE Supply under the payment bond.

## II.

### *Standard for Summary Judgment*

The standard for summary judgment is straightforward and well-established: A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and, (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.* In other words, "[t]he party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.,* 144 F.3d 134 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548). Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505.

In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Id.* 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir.1992).

## III.

### *Analysis*

"The Miller Act requires a general contractor performing a contract valued at over $25,000 on any public construction project to obtain a performance bond for the protection of persons supplying labor and material in the prosecution of the work on the project." *U.S. for Use and Benefit of Water Works*

*Supply Corp. v. George Hyman Const. Co.,* 131 F.3d 28, 31 (1st Cir.1997); 40 U.S.C. § 270a(a)(2). Persons who have "furnished labor or material" to a public construction project may sue to recover from the payment bond any amount owed to them. *Id.;* 40 U.S.C. § 270b(a).

The purpose of the Miller Act is "to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." *United States for Benefit and on Behalf of Sherman v. Carter,* 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776 (1957); *see also F.D. Rich Co. v. United States for Use of Industrial Lumber Co.,* 417 U.S. 116, 122, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974).

The Miller Act, 40 U.S.C. § 270b(a), provides that a supplier who has a direct contractual relationship with a first-tier subcontractor, but no relationship with the general contractor, must send written notice of its claim on the payment bond to the general contractor within ninety days from the date that it supplies the last of the materials for which it makes a claim.

## A. *The True Supplier: GE Caribe or GE Supply*

■ The Miller Act provides that only a person with a "direct contractual relationship" with either the general contractor or a first-tier subcontractor of the general contractor may recover from the bond. 40 U.S.C. § 270b(a). Anyone whose relationship to the general contractor is more remote than a second-tier subcontractor may not recover on the payment bond. *J.W. Bateson Co. v. United States ex rel. Bd. of Trustees of the Nat'l Automatic Sprinkler Indus. Pension Fund,* 434 U.S. 586, 590–91, 98 S.Ct. 873, 55 L.Ed.2d 50 (1978). Defendants argue that there exists a genuine issue of material fact regarding what equipment in fact GE Supply supplied, and what equipment GE Caribe supplied; the importance of these distinctions being that the attenuated rela-

tionship of a supplier to a supplier to a subcontractor is not protected under the Miller Act. *Clifford F. MacEvoy Co. v. United States for Use and Benefit of Calvin Tomkins Co.,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944).

■ We do not find any material dispute of fact regarding what equipment GE Supply delivered and what equipment GE Caribe delivered. The invoices the parties submitted as exhibits clearly establish this fact. That an exact determination requires a glance at the invoices and records themselves does not create a disputed issue of fact, which renders summary judgment appropriate. This does not even amount to a factual quibble and we see no trial-worthy issue here. The record of invoices, the authenticity of which neither party disputes, leaves no factual question as to which company supplied which equipment to G & C.[1]

## B. *Statute of Limitations*

■ The statute of limitations for the Miller Act provides that a suit must be commenced "after the expiration of one year after the day on which the last of labor was performed or material was supplied by [the supplier]." 40 U.S.C. § 270b. In other words, the statute of limitations begins to accrue on the day of full performance of the subcontract, which is the date when the last of the labor was performed or the material supplied. 40 U.S.C. § 270b(b); *see also United States Use and Benefit of Luis Cabrera, S.E. v. Sun Eng'g Enter., Inc.,* 817 F.Supp. 1009, 1016 (D.P.R.1993).

Defendants argue that GE Supply's claim for materials it supplied to G & C prior to June 11, 1996 is time-barred by virtue of the term allegedly on GE Supply's invoices, which provides that "[e]ach shipment shall be deemed to have been sold under a separate and independent contract."

■ We have examined the actual invoices which GE Supply used for the delivery of supplies to G & C, and find that the reverse side of each invoice specifically states at

---

1. GE Caribe is not a party to this suit, and GE Supply has renounced its claim against GE Caribe for unpaid balances. Naturally, GE Supply may recover only for the material which it can document it delivered to G & C.

paragraph 3: "PAYMENT. Each invoice shall be due and payable within its own terms." *See Document Docket No. 18, Defendants' Ex. A and B.* We find that GE Supply did not enter into a "series of contracts" with G & C, but rather agreed to provide G & C with the necessary materials for the Project through a series of shipments from GE Supply to G & C. Each one of these shipments, as the back of the GE Supply invoices indicate, was "due and payable within its own terms." This is sufficient evidence of one single agreement between GE Supply and G & C, rather than a series of contracts.

The last GE Supply delivery of material to G & C was on July 2, 1996. GE Supply brought suit on June 11, 1997, less than one year after its last delivery. Accordingly, we find that GE Supply's claim is not time-barred under the Miller Act.

### C. *Estoppel for Failure to Mitigate*

Defendants argue that GE Supply should be estopped from bringing this suit because it failed to notify American of the accumulation of significant arrearage and continued to supply G & C despite its knowledge that G & C could not pay. Defendants maintain that GE Supply wilfully led American to believe that G & C was making timely payments, and that American detrimentally relied upon GE Supply's false representation. Defendants argue that GE Supply believed it could ultimately recover the balance of its sales to G & C from American and took the opportunity to maximize its sales and profit at American's expense.

 Estoppel may be a proper defense in a Miller Act case, if it can be shown that the party asserting it suffered a detriment. *United States for Use and Benefit of Krupp Steel Products, Inc. v. Aetna Ins. Co.,* 923 F.2d 1521, 1526 (11th Cir.1991) (a finding of estoppel should not come lightly and only where the supplier's irresponsibility is sufficiently great); *United States for Use of Friedrich Refrigerators v. Forrester,* 441 F.2d 779, 783 (5th Cir.1971); *Graybar,* 387 F.2d at 59. "[C]ourts are hesitant to estop suppliers from recovery under a surety bond absent a supplier's fraud or negligence." *Trane Co., a div. of American Standard, Inc.*

*v. Whitehurst–Lassen Const. Co.,* 881 F.2d 996, 1004 (11th Cir.1989) (citing *Krupp Steel,* 831 F.2d at 983 & n. 3; *Moyer v. United States for Use of Trane Co.,* 206 F.2d 57, 60–61 (4th Cir.1953)) (materialman's fraud in providing false receipts to subcontractor estops recovery). However, the record provides no evidence that GE Supply made any misrepresentation or failed to disclose a material fact. Moreover, American fails to present evidence of detriment, a prerequisite to estoppel. Accordingly, we do not find that GE Supply is estopped from asserting its claim.

### IV.

#### *Conclusion*

In light of the foregoing analysis, we **REAFFIRM** our order granting summary judgment in favor of Plaintiff, and **DENY** Defendants' cross-motion for summary judgment.

**IT IS SO ORDERED.**