# United States Court of Appeals
## For the First Circuit

No. 99-1571

GE SUPPLY, THE UNITED STATES OF AMERICA FOR THE USE
AND BENEFIT OF THE GE SUPPLY, A DIVISION OF GENERAL ELECTRIC
COMPANY,

Plaintiff, Appellee,

v.

C&G ENTERPRISES, INC.,
AMERICAN INSURANCE COMPANY,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fusté, U.S. District Judge]

Before

Torruella, Chief Judge,

Campbell and Wallace[*], Senior Circuit Judges.

Paul T. DeVlieger, with whom Harry R. Blackburn &
Associates, P.C. was on brief for appellants.
Andrés R. Neváres-González, with whom José A. Sánchez
Alvarez, Melissa Reyes Pérez, and Nevárez, Sánchez-Alvarez &
Mendez were on brief for appellee.

[*]Of the Ninth Circuit, sitting by designation.

May 2, 2000

**CAMPBELL, <u>Senior Circuit Judge</u>.** Defendants, appellants G & C Enterprises, Inc. ("G & C") and American Insurance Company ("American") appeal from the district court's grant of summary judgment pursuant to the Miller Act in favor of plaintiff, appellee the United States for the use and benefit of GE Supply ("GE Supply"). We affirm the judgment below, although on grounds somewhat different from those relied upon by the district court.

**I.**

We describe the relevant facts in the light most favorable to the appellant. <u>See</u> <u>New York State Dairy Foods, Inc.</u> v. <u>Northeast Dairy Compact Comm'n</u>, 198 F.3d 1, 3 (1st Cir. 1999). G & C entered into a contract with the United States to perform electrical services on the United States Naval Station Commissary Facility in Puerto Rico ("the Project"). American, as surety, issued a payment bond on behalf of G & C in connection with the Project. GE Supply and its affiliate, GE Caribe, provided materials to G & C for use in the Project.[2] GE Supply's last delivery of materials to G & C was on July 2, 1996. GE Supply enclosed an invoice with each delivery.

---

[2]GE Caribe is not a party to this suit.

Printed on the reverse side of the invoices were terms and conditions, which included the statement that "[e]ach invoice shall be due and payable within its own terms." The invoices also contained an integration clause:

> This document contains the complete and exclusive statement of the terms of the contract between us. It supercedes all previous requests, quotations or agreements. Any additional or different terms will not be part of the contract unless approved by GE Supply in writing.

Also included in the terms and conditions was a provision stating: "In the event of non-payment, you agree to pay us reasonable attorney's fees and court costs, if any, incurred by us to collect payment and interest charges."

G & C failed to pay on outstanding invoices. GE Supply notified American of G & C's nonpayment within ninety days of the last delivery, but American refused to pay GE Supply under the payment bond. On June 11, 1997, GE Supply filed a complaint against G & C and American in the District Court for the District of Puerto Rico pursuant to the Miller Act, 40 U.S.C. § 270a et seq. GE Supply erroneously attached to the complaint an invoice used by GE Caribe, which contained different terms and conditions from the invoices GE Supply had sent to G & C. The terms and conditions on the GE Caribe invoices stated "Each

-3-

shipment or delivery shall be deemed to have been sold under a separate and independent contract."

On August 12, 1998, GE Supply moved for summary judgment. Defendants opposed that motion and cross-moved for summary judgment, contending that the invoices on which GE Supply sought to recover represented separate and independent contracts, many of which were completed outside the one-year limitation period contained in the Miller Act, id. § 270b(b). Specifically, defendants maintained that GE Supply's claim was time-barred to the extent it was based on materials it supplied to G & C prior to June 11, 1996.[3]

While under the mistaken belief that no opposition had been filed, the district court allowed GE Supply's motion for summary judgment on September 10, 1998. Defendants moved for reconsideration on the grounds that it had, in fact, timely responded to GE Supply's motion. On October 6, 1998, the court allowed the motion and vacated its summary judgment order, stating that it would consider the matter anew.

On October 26, 1998, GE Supply filed a response to defendants' cross-motion for summary judgment asserting, inter alia, that a GE Caribe invoice (including the provision "[e]ach

---

[3]G & C also asserted an estoppel argument based on GE Supply's continuation of shipments after G & C failed to pay. G & C does not press this argument in its appellate brief.

shipment or delivery shall be deemed to have been sold under a separate and independent contract") was incorrectly attached to its complaint due to an attorney's error. GE Supply provided the court with its own invoices containing the correct terms and conditions. GE Supply also admitted that it had erroneously included in its damages calculation sums allegedly due to GE Caribe. It acknowledged that it was not entitled to recover those sums, and withdrew claims in the amount of $20,939.51.

On November 3, 1998, defendants filed a Motion for Leave to File a Reply Brief so it could address the "new" terms and conditions printed on the correct invoices. The district court did not act on this motion, and defendants never filed the reply brief. On November 18, 1998, the district court entered an opinion and order reaffirming its earlier order granting summary judgment to GE Supply. See United States ex rel. GE Supply v. G & C Enterprises, Inc., 29 F. Supp. 2d 49 (D.P.R. 1998). As to the issue of statute of limitations, the court concluded that, upon examination of the correct invoices, "GE Supply did not enter a 'series of contracts' with G & C, but rather agreed to provide G & C with the necessary materials for the Project through a series of shipments . . ." Id. at 53. Accordingly, it held that the complaint was timely filed. The district court entered a judgment for damages in the amount of

$134,034.52 and awarded attorney's fees in the amount of twenty percent of the judgment.

On December 2, 1998, defendants filed a motion for relief from judgment pursuant to Fed. R. Civ. P. 59(e) and 60. They contended that the district court erred in applying the summary judgment standard; that it failed to construe the terms and conditions in accordance with their plain and ordinary meaning; and that it erred in awarding attorneys' fees. On March 5, 1999, the district court entered another opinion and order denying defendants' motion. It stated that additional briefing would not have changed defendants' argument that each invoice was a separate contract, and that "[d]efendants had ample opportunity to make all necessary points." The court clarified that its earlier judgment was to exclude the claims relating to materials supplied by GE Caribe. Defendants appeal from the district court's grant of summary judgment.

## II.

This Court reviews orders for summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor. See Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999). This standard of review does not limit us to

the district court's rationale; we may affirm the entry of summary judgment on "any ground revealed by the record." Id.

Defendants argue that the district court erred in determining that there was a single agreement between G & C and GE Supply for materials, rather than a series of separate and independent contracts. Hence, they contend, the court incorrectly concluded that the entirety of GE Supply's claim was timely filed under the Miller Act. Defendants also argue that the district court erred in awarding attorney's fees against American.

"The Miller Act requires a general contractor performing a contract valued at over $25,000 on any public construction project to obtain a performance bond for the protection of persons supplying labor and material in the prosecution of the work on the project." United States ex rel. Water Works Supply Corp. v. George Hyman Constr. Co., 131 F.3d 28, 31 (1st Cir. 1997); 40 U.S.C. § 270a(a)(2). Persons who have "furnished labor or material" to a public construction project may sue to recover from the payment bond any amount owed to them. 40 U.S.C. § 270b(a).

The purpose of the Miller Act is "to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive

under state statutes with respect to the construction of nonfederal buildings." United States ex rel. Sherman v. Carter, 353 U.S. 210, 216 (1957); see also F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 122 (1974). The Act is "highly remedial" and entitled to a "liberal construction." See J.W. Bateson Co. v. United States ex rel. Bd. of Trustees, 434 U.S. 586, 594 (1978). Keeping in mind these principles, we turn to defendants' arguments.

A.    Statute of Limitations

The statute of limitations contained in the Miller Act provides that a suit must be commenced "after the expiration of one year after the day on which the last of labor was performed or material was supplied by [the supplier]." 40 U.S.C. § 270b(b). Here, it is undisputed that GE Supply's last delivery to G & C was on July 2, 1996, and that GE Supply filed its complaint under the Miller Act on June 11, 1997.

The district court interpreted the language printed on the invoices to conclude that they represented a single agreement between GE Supply and G & C, not a series of separate and independent contracts, as defendants alleged. Accordingly, it concluded that no part of GE Supply's claim is time-barred under the Miller Act. See id. While we agree with the district court's ultimate conclusion, we reach it not on the basis of

-8-

state-law contract interpretation, but on the Miller Act itself.

The plain language of § 270b(b) fixes the relevant deadline as one year from "the day on which the last of . . . material was supplied." There is nothing ambiguous about this provision, and so we must give effect to its obvious meaning. See General Elec. Co. v. Southern Constr. Co., 383 F.2d 135, 138 (5th Cir. 1967). The text of § 270b(b) references only the time that the last material was supplied; it does not advert to whether or not the contractor and the supplier treated the separate shipments of project material under the bond as being governed by a distinct contract. Regardless of whether each invoice represented in certain respects a separate contract as between the parties, it is undisputed that GE Supply provided material for a single project, and that American issued a single payment bond on behalf of G & C in connection therewith. Hence, since GE Supply brought its Miller Act claim within the one-year period following the day on which it supplied the last material for the Project, its entire claim is timely. See id.; United States ex rel. Trane Co. v. Raymar Contracting Corp., 406 F.2d 280 (2d Cir. 1968) (Kaufman, J., dissenting).

In so holding, we follow such authority as there is addressing this question. In his dissenting opinion in Trane,

Judge Kaufman considered whether a plaintiff should be permitted to recover for material delivered under two separate agreements for the same project, where only one delivery took place within a year of filing.[4]  See Trane, 406 F.2d at 283 (Kaufman, J., dissenting).  He concluded that the statute's plain language and underlying policies permitted plaintiffs to proceed with a claim encompassing both agreements:

> It is more in keeping with Congressional intent for us to construe the one-year limitation as running only once for each supplier on a job, commencing on the last day he supplied any material for work under the prime contract.  Not only does this result better comport with the literal language of § 270b(b), which contains no requirement that the time limit should run separately for each separate claim, as does § 270b(a) (dealing with the 90 day notice provision), but I believe it wiser doctrine.  Otherwise, a materialman would be required to bring multiple suits to recover for materials which he supplied to a single project under separate contracts spread over several years.  Piecemeal litigation is a plight to be avoided wherever feasible.

---

[4]In Trane, the plaintiff sought to recover compensation under the Miller Act for air-conditioning equipment it had supplied for a project, as well as for electric motors that were subsequently supplied by another company pursuant to a different agreement.  See Trane, 406 F.2d at 282.  Only the motors were supplied within a year before plaintiff filed its complaint. The majority in Trane did not base its holding on the issue before us.  Rather, it concluded that the plaintiff did not timely file its Miller Act claim because it was not a party to, and had not ratified, the agreement to provide electric motors. See id.

-10-

Id. at 283 (internal citations omitted).

We are persuaded by Judge Kaufman's analysis, as have been the district courts considering this issue.  See, e.g., United States ex rel. Speer v. Damco Contractors, Inc., No. CIV.A. 85-7404, 1986 WL 8483, at *2 (E.D. Pa. Jul. 31, 1986); United States ex rel. Grotnes Machine Works, Inc. v. Henry B. Byors & Son, Inc., 454 F. Supp. 203, 205 (D.N.H. 1978); Alaska Helicopters, Inc. v. Whirl-Wide Helicopters, Inc., 406 F. Supp. 1008, 1011 (D. Alaska 1976).  This approach is consonant with the purposes of the Miller Act and the courts' duty to construe its terms liberally.  See Trane, 406 F.2d at 283 (Kaufman, J., dissenting); General Elec., 383 F.2d at 138-39.  To the extent that the Miller Act seeks to protect contractors by establishing strict deadlines, that objective "must take a back seat to the purpose of the overall statute, which is to provide recovery to suppliers who have provided materials but not received compensation."  Water Works, 131 F.3d at 34 (citing Noland Co. v. Allied Contractors, Inc., 273 F.2d 917, 20-21 (4th Cir. 1959) (interpreting § 270b(a)).

Moreover, our disposition is consistent with this court's interpretation of a related provision in the Miller Act, section 270b(a), which establishes a ninety-day deadline for

-11-

notice of claim on a payment bond.[5]  See id.  In Water Works, the
defendant construction company argued that each order under an
open account represented a separate contract with an individual
ninety-day limit.  See id.  We rejected that contention, holding
that the notice period for all of the deliveries begins on the
date of the last delivery to the project.  See id.

       B.       Attorney's fees

As the Miller Act does not itself authorize the courts
to award attorney's fees to a successful plaintiff, the matter
of fees is left to federal common law.  See F.D. Rich, 417 U.S.
at 126- 27.  The so-called "American Rule" of fees applies,
under which attorney's fees "are not ordinarily recoverable in
the absence of a statute or enforceable contract providing
therefor."  Fleischmann Distilling Corp. v. Maier Brewing Co.,
386 U.S. 714, 717 (1967).  In accordance with the exception for
an enforceable contract, several circuits have upheld fee awards
in Miller Act cases where the relevant contract provided for
attorney's fees.  See, e.g., United States ex rel. Maddux Supply
Co. v. St. Paul Fire & Marine Ins. Co., 86 F.3d 332, 336 (4th

---

[5]The notice provision states, in relevant part, that "any person having direct contractual relationship with a subcontractor  . . . shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person ... furnished or supplied the last of the material for which such claim is made . . ."  40 U.S.C. § 270b(a) (emphasis added).

-12-

Cir. 1996); <u>United States ex rel. Reed</u> v. <u>Callahan</u>, 884 F.2d 1180, 1185 (9th Cir. 1989); <u>United States ex rel. Southeastern Mun. Supply Co., Inc.</u> v. <u>National Union Fire Ins. Co.</u>, 876 F.2d 92, 93 (11th Cir. 1989); <u>United States ex rel. Carter Equip. Co.</u> v. <u>H.R. Morgan, Inc.</u>, 554 F.2d 164, 166 (5th Cir. 1977); <u>D & L Constr. Co.</u> v. <u>Triangle Elec. Supply Co.</u>, 332 F.2d 1009, 1013 (8th Cir. 1964).

Here, the terms and conditions printed on the relevant invoices contained a fee-shifting provision stating: "In the event of non-payment, you agree to pay us reasonable attorney's fees and court costs, if any, incurred by us to collect payment and interest charges."  The district court has made clear that it based its award solely on those sums owed to GE Supply, and not those allegedly owed to GE Caribe.  Following the other courts that have enforced fee-shifting in Miller Act agreement cases, we hold that the district court did not err in awarding attorney's fees to GE Supply under the Miller Act.

<u>Affirmed</u>.