UNITED STATES of America, for the Use and Benefit of GRAY–BAR ELECTRIC COMPANY, INC., a New York Corporation, Plaintiff,

v.

J. H. COPELAND & SONS CONSTRUCTION, INC., a corporation, et al., Defendants-Cross Defendants-Appellants,

v.

F & D ELECTRICAL CONTRACTORS, INC., Defendant-Cross Plaintiff Appellee.

No. 76–2053.

United States Court of Appeals, Fifth Circuit.

March 3, 1978.

Wm. K. Zewadski, William C. Frye, Tampa, Fla., for Reliance.

R. Fred Lewis, Coconut Grove, Fla., for J. H. Copeland & Sons.

Frank Murray, Miami, Fla., for defendants-cross defendants-appellants.

Charles F. Mills, William A. Meadows, Jr., South Miami, Fla., for defendant-cross plaintiff appellee.

George A. Buchmann, South Miami, Fla., for USA, Etc.

Before COLEMAN, HILL, and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

This appeal challenges the trial court's conclusion that J. H. Copeland & Sons Construction, Inc. ("Copeland"), a Small Business Act, 15 U.S.C. § 637(a), "minority" contractor, was substantially responsible for delays in the construction of a United States Aviation facility adjacent to the Miami International Airport and thereby breached its contract with F & D Electrical Contractors, Inc. ("F & D"), the electrical subcontractor on the project.[1] Finding that there was substantial evidence to support the factual conclusions of the trial court, and that the opinion was consonant with the applicable rules of law, we affirm.

I.

Appellant contends that the trial court was clearly erroneous in concluding that Copeland materially breached its contract by reason of the delay. It is contended that the delay, even if material, does not go to the heart of the contract so as to constitute a breach. See, *U.S. for Use and Benefit of Pickard v. Southern Const. Co.,* 6 Cir. 1961, 293 F.2d 493, *rev'd in part and remanded on other grounds,* 1962, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31.

In an action between private parties, even though the contract is governed by the Miller Act, it suffices to show that the contractor caused a substantial delay in performance, that the contract terms forbade such a delay, and that the plaintiff was injured as a result. See, *Steenberg Construction Co. v. Prepakt Concrete Co.,* 10 Cir. 1967, 381 F.2d 768; *Bruno Law and Richard Marlink v. United States,* Ct.Cl. 1971, 195 Ct.Cl. 370.

The trial court found that the subcontract between Copeland and F & D incorporated by reference the terms of the general contract between Copeland and the government.[2] Both the subcontract and the general contract provided that the work was to be completed on or before January 15, 1974. F & D ceased work on August 8, 1974, 188 days after construction was originally due to be completed, but when it was still not finished. The trial court concluded that, if

---

1. The case was tried on the basis of cross-claims between F & D, Copeland, and Reliance Insurance Company, Copeland's surety under the Miller Act, 40 U.S.C. §§ 270a–270d.

2. Only the "disputes" clause, which is not relevant here, was not incorporated. See, *H. W. Caldwell & Son, Inc. v. U. S. for the use of John H. Moon & Sons, Inc.,* 5 Cir. 1969, 407 F.2d 21.

the delay had been occasioned in substantial part by government-ordered changes or other factors reasonably beyond Copeland's control, then F & D had breached the subcontract by stopping work. However, the court found that the delays were caused in substantial part by Copeland, and that these delays constituted a material breach of the subcontract, thereby justifying F & D in abandoning the project on August 8, 1974.

Article 12.10 of the subcontract provides "The Contractor shall cooperate with the Subcontractor in scheduling and performing his Work to avoid conflicts or interference in the Subcontractor's Work." Additionally, it is an implied condition of every government construction contract that neither party will hinder the performance of the other. *Bruno Law, supra.*

The contract between Copeland and the government was subject to the vicissitudes endemic to government contracts. F & D's subcontract with Copeland explicitly provided and necessarily implied that F & D would bear with any delays caused by the government. But neither the contract nor the nature of the work obliged F & D to suffer the additional cost that resulted from delay due to Copeland's inexpertness in performing its work and in discharging its own contractual duties to subcontractors.

■ There is an abundance of evidence to support the conclusion reached by the trial court that Copeland's delay was sufficiently material and prejudicial to constitute a breach of its contractual obligations,[3] and that F & D was injured as a result. Despite the various time extensions resulting from the government change orders, which appellant contends account for the vast proportion of the delay, there were no extensions in existence when F & D finally left the job on August 8, 1974. Moreover,

as the trial court found, "F & D walked the last mile" by continuing work without any assurance of compensation. See, *U. S. for Use of F. E. Robinson Co. of N. C. Inc. v. Alpha Continental,* D.N.C.1967, 273 F.Supp. 758, aff'd 4 Cir. 1969, 406 F.2d 561, *cert. denied,* 1969, 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 239.

Appellant also contends that F & D was required to prove the specific extent of the alleged wrongful delay caused by Copeland itself, distinguished from delays occasioned by the government. However, the cases relied upon, *Bruno Law, supra; Boyajian v. U. S.,* 1970, 191 Ct.Cl. 233, 423 F.2d 1231; *Wunderlich Contracting Co. v. U. S.,* 1965, 173 Ct.Cl. 180, 351 F.2d 956; *Commerce International Co. v. U. S.,* 1964, 167 Ct.Cl. 529, 338 F.2d 81; and, *Great Lakes Construction Co. v. U. S.,* Ct.Cl.1942, 95 Ct.Cl. 479, all involved claims by contractors against the United States for damages sustained as a result of delay caused by the government. They concerned the proof necessary to establish not merely the fact of breach of contract but the amount of damages assessable against the United States as a result. The exacting rules conditioning the determination of damages against the sovereign for its delay do not prescribe what constitutes a breach of contract by a private party for purposes of excusing further performance.

Hence, we are unable to find that the trial court erred in concluding that Copeland breached its subcontract with F & D, and that this excused F & D's failure to continue work after August 8, 1974.

II.

■ With respect to the amount of damages suffered, in a suit between private parties for breach of a construction contract by delay, the party who seeks to collect

---

**3.** The appellant challenges the finding that "F & D was literally unable to install conduits, pull wires and other work because the building and areas involved were not structurally ready for the same." It is apparent that this conclusion was based upon the testimony of Mr. Diaz, F & D's President. Appellant contends that this testimony referred only to the UPS building,

where delay was attributable to government change orders. However, although Mr. Diaz testified about change order problems and cited the UPS area as an example, he concluded that the problem that areas were not structurally ready for F & D's work "was occurring primarily throughout the whole job." Trial transcript, February 6, 1976, at 179.

damages has the burden of proving the extra costs it incurred as a result of the breach. *United States v. Citizens & Southerns Nat. Bank of Atlanta, Ga.,* 4 Cir. 1966, 367 F.2d 473, 480; *Lichter v. Mellon-Stuart Co.,* 3 Cir. 1962, 305 F.2d 216. If there are factors for which the defendant is responsible and factors for which it is not, the plaintiff must provide a reasonable basis for apportioning the damages. *United States v. Citizens & Southerns, supra; Lichter v. Mellon-Stuart Co., supra*; see also, *Wunderlich Contracting Co. v. United States, supra.* However, where the defendant is responsible for all of the several sources of delay, it would serve no purpose to require the plaintiff to apportion the amount of damages caused by each.[4]

■ Here, there were only two causes of the delay: the government change-orders and Copeland's lack of diligence. Copeland is liable under the subcontract for all additional costs sustained as a result of government change-orders.[5] Copeland is liable in breach of contract for all damage suffered as a result of its own lack of diligence. Hence, regardless of the amount of damage attributed to each cause, Copeland is liable for the whole. The damages were properly assessed to cover both. Accordingly, the judgment of the district court is AFFIRMED.

---

4. In *Wunderlich, supra,* there was an equitable adjustment clause, but a cause for which the government was not legally responsible, the Korean War, was a major source of delay. Hence, apportionment of damages was required.

5. Provision three of the general contract, as incorporated by reference in the subcontract, provides in relevant part:

The Contracting Officer may, at any time . . . make any change in the work within the general scope of the contract . . .

\* \* \* \* \* \*

If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work . . . an equitable adjustment shall be made and the contract modified accordingly . . . .