UNITED STATES of America For the Use and Benefit of HELLER ELECTRIC CO., INC., et al. S. E. B. Masonry, Inc., Appellant,

v.

WILLIAM F. KLINGENSMITH, INC., et al.

No. 80–2250.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 10, 1981.

Decided Feb. 2, 1982.

---

Leslie Yu, Washington, D. C., with whom Christopher M. Kerns, Washington, D. C., was on the brief for appellant.

Michael J. Goergen, Washington, D. C., with whom Branko Stupar, Washington, D. C., was on the brief for appellees.

Before BAZELON, Senior Circuit Judge, and WILKEY and EDWARDS, Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge BAZELON.

BAZELON, Senior Circuit Judge:

This is a Miller Act[1] action brought in the name of the United States for the use and benefit of SEB Masonry, Inc. (SEB) against William F. Klingensmith, Inc. (Klingensmith) and its Sureties, Fireman's Fund Insurance Co. (Fireman's Fund) and Hanover Insurance Co. (Hanover). SEB appeals a district court ruling[2] limiting the amount of damages recoverable in a contract dispute with Klingensmith. Klingensmith and SEB were the general contractor and subcontractor, respectively, on two construction projects—the parking garage and the Allied Health Building—at the Van Ness campus of the University of the District of Columbia.[3] Fireman's Fund was the surety on the parking garage and Hanover was the surety on the Allied Health Building.

## I. BACKGROUND

On April 29, 1977 and October 12, 1977, respectively, the United States General Services Administration awarded defendant William F. Klingensmith, Inc. contracts to build the parking garage and the Allied Health Building at the Van Ness campus of the University of the District of Columbia.[4]

The expected date of completion for the garage was February 12, 1978.[5] At that point, work was to begin on the Allied Health Building, which was to be built on top of the parking garage. Klingensmith subcontracted to SEB the masonry work on each building. SEB began work on the parking garage in November 1977 and expected to complete its work within 90 calendar days.[6] As it turned out, SEB did not complete the job until October 1978.[7] Each party blamed the other for delaying completion of the project, and Klingensmith withheld $16,906.53 from the amount it owed SEB.[8]

After work on the parking garage was complete, SEB began work on the Allied Health Building. After working for three days in May 1979, SEB left the site and refused to return. In June 1979, Klingensmith terminated its agreement with SEB and hired Pentek Corp. to do the masonry work for $14,398 more than its contract with SEB provided.[9]

## II. THE DISTRICT COURT'S DECISION

SEB filed this action against Klingensmith and its sureties, seeking damages for Klingensmith's delay on the parking garage, and for lost anticipated profits on the Allied Health Building contract. Klingensmith counterclaimed against SEB for delaying work on the parking garage and the Allied Health Building, and for breaching its contract for work on the Allied Health

1. 40 U.S.C. §§ 270a–270d (1976).

2. Reprinted in the Joint Appendix (J.A.) at 70.

3. Originally, two other subcontractors, Heller Electric Co. and John A. Quinn, Inc., were co-plaintiffs with SEB. Heller settled its claim under the parking garage contract. Quinn's and Heller's claims under the Allied Health Building contract were dismissed without prejudice as prematurely brought. District court op. at 1 n.1.

4. District court op. at 2.

5. *Id.* at 3.

6. SEB brief at 6.

7. District court op. at 3. At that point, the job was certified as substantially complete. SEB, however, did additional work under the parking garage contract in March, April and May, 1979. District court op. at 3.

8. Actually, Klingensmith withheld $19,406.53 from SEB. SEB, however, admitted that it had not fully completed the masonry work on the garage and deducted $2,500 from its claim against Klingensmith. *Id.*

9. *Id.* at 3, 5.

Building.[10] After trial, the district court found that Klingensmith had delayed the completion of the parking garage. Specifically, it found that Klingensmith had failed to coordinate adequately the work of its subcontractors and that it failed to provide sufficient supervisory personnel on the job. The court also found, however, that SEB contributed to the delay and concluded, therefore, that neither party could collect delay damages from the other. In addition, the district court found that SEB was unjustified in failing to complete its work on the Allied Health Building, and that it had, therefore, breached its contract with Klingensmith.[11] Accordingly, the district court ruled that SEB owed Klingensmith $14,398 —the difference between the original contract price and Pentek's contract price. That amount was deducted from the $16,906.53, which Klingensmith still owed SEB for work on the garage, and the court entered a judgment against Klingensmith and Fireman's Fund for $2,508.53.[12]

## III. ANALYSIS

SEB argues that the district court erred in refusing to award damages for Klingensmith's delay, even though SEB may have been partially responsible for the delay. SEB contends that the district court should have determined the extent to which each party was harmed as a result of the other party's delay, and apportioned the damages accordingly. In addition, SEB urges that the district court erred in ruling that it had breached its contract to do the masonry work on the Allied Health Building. We agree with SEB with respect to delay damages on the parking garage contract, but we agree with the district court's conclusion that SEB breached the Allied Health Building contract.

### A. Damages for Delay

As stated above, the district court found that Klingensmith had violated its contractual obligations by delaying SEB's work on the parking garage. Klingensmith asserts that the district court's finding is invalid as a matter of law because its subcontract with SEB contained no completion date. We disagree. In a construction contract like the subcontract at issue here, the prime contractor implicitly promises to provide such working conditions as may be necessary to allow its subcontractor to carry out its obligations under the contract. *Burgess Construction Co. v. M. Morrin & Son Co., Inc.*, 526 F.2d 108, 113 (10th Cir. 1975); *George A. Fuller Co. v. United States*, 69 F.Supp. 409 (Ct.Cl.1947).[13] If a contractor interferes with the work of its subcontractor, it has breached its obligation, and the subcontractor is entitled to recover for the resulting delays. *George A. Fuller v. United States, supra.* We, therefore, affirm this aspect of the district court's decision.

In addition to finding that Klingensmith had delayed SEB's work on the parking garage, the district court found that SEB had delayed the completion of both the garage and the Allied Health Building. The court did not, however, evaluate each party's claim for delay. Instead, it concluded, as a matter of law, that neither party could recover for the other party's delay. In so doing, the district court erred.

There is no doubt that if only one party had delayed, that party would have been liable to the other for damages. *See, e.g., United States ex rel. Gray-Bar Electric Co., Inc. v. J. H. Copeland & Sons Construction, Inc.*, 568 F.2d 1159 (5th Cir. 1978); *United States ex rel. Mariana v. Piracci Construction Co., Inc.*, 405 F.Supp. 904 (D.D.C.1975); *United States ex rel. Otis*

---

**10.** Klingensmith also counterclaimed for damages for corrective work and reprocurement costs, *id.* at 1, 3, but has not appealed their denial by the district court.

**11.** *Id.* at 3–4.

**12.** *Id.* at 5.

**13.** The issue whether federal common law or state law applies to this type of dispute between a contractor and subcontractor is unsettled. *See, e.g., United States ex rel. Building Rentals Corp. v. Western Casualty and Surety Co.*, 498 F.2d 335, 338 n.4 (9th Cir. 1974). Since nothing we decide contradicts either body of law, we do not address that issue.

*Elevator Co. v. Piracci Construction Co., Inc.,* 405 F.Supp. 908 (D.D.C.1975). In a case like this, where each party delays the other, it follows that each should be able to recover to the extent of the injury caused by the other's delay.[14] Such a rule protects each party from losses due to the delay of the other throughout the period of performance. It also induces each party to avoid imposing such losses on the other at any time during the period of performance. In contrast, a rule precluding a party from recovering damages for delay, once the party itself delays, would leave the parties to a contract unnecessarily vulnerable to delay by the other. We see no wisdom in, nor authority for, such a rule of preclusion. Therefore, when both parties to a contract breach their contractual obligations by delaying performance, a court must assess the losses attributable to each party's delay and apportion damages accordingly.

 A plaintiff claiming, or a defendant counterclaiming, delay damages must prove, first, the amount of delay caused by the other party,[15] and second, the amount of damages attributable to such delay. In this case, therefore, SEB can recover whatever damages that it proves Klingensmith to have caused, *minus* the amount of damages Klingensmith proves SEB to have caused.[16]

B. *Breach of the Allied Health Building Contract*

 As stated above, the district court concluded that SEB had breached its contract with Klingensmith to build the Allied

Health Building. The court supported is conclusion with findings that SEB had failed to return to the job after May 1977, that SEB failed to notify Klingensmith of its intentions regarding completion of the work, and that SEB was working on another project when it was supposed to be working on the Allied Health Building.[17] In addition, the evidence showed that on March 12, 1979, SEB had reaffirmed its intent to perform its obligations under the Allied Health Building contract,[18] and that Klingensmith had repeatedly and unsuccessfully attempted to prompt SEB to complete performance.[19] We do not find the district court's findings of fact clearly erroneous. Nor do we find error in its conclusion of law. Therefore, we affirm this aspect of the district court's decision.

C. *Liability of Surety Under the Miller Act*

 As section A of this opinion establishes, Klingensmith may be held liable to SEB for the net cost of each party's delay in completing the parking garage. The issue arises, therefore, whether Fireman's Fund, Klingensmith's surety on the parking garage contract, can be held liable for those damages. We conclude that, under the Miller Act, it can.[20]

Section 1(a)(2) of the Miller Act[21] requires that government contractors must furnish payment bonds for the protection of subcontractors that provide labor and materials for work on government contracts.[22] Section 270b(a) of the Act provides that

14. It does not appear that either party claims that its own delay was caused by the other party's delay. If such a claim were asserted, it would relate both to the claimant's responsibility for its own delay, *see, e.g.,* 6 A. Corbin, Contracts § 1264 (2d ed. 1962), and to the other party's responsibility for delay.

15. The court must exclude from this part of the calculation the claimant's own delay.

16. Each party must prove the incremental losses caused by the other party's delay, above and beyond the loss that would have been incurred by the party's own delay. *See also* note 15 *supra.*

17. District court op. at 5.

18. J.A. at 53 (letter from SEB to Klingensmith).

19. J.A. at 51 (letter from Klingensmith to SEB).

20. It is settled that federal law governs the rights and obligations of a Miller Act surety. *F. D. Rich Co. v. Industrial Lumber Co., Inc.,* 417 U.S. 116, 127, 94 S.Ct. 2157, 2164, 40 L.Ed.2d 703 (1974).

21. 40 U.S.C. § 270a(a)(2) (1976).

22. Section 270a(a) provides:
 Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work

[e]very person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and *judgment for the sum or sums justly due him* . . . .

40 U.S.C. § 270b(a) (1976) (emphasis added).

The purpose of these provisions of the Miller Act is to provide subcontractors on government projects a security interest similar to that which they would have on private projects. Ordinarily, the availability of a mechanic's lien to a subcontractor provides security. Because a mechanic's lien, however, cannot attach to government property, an alternative system of security had to be created. That is what Congress achieved in enacting the Miller Act. It placed subcontractors to government contractors on substantially equal footing with subcontractors to private contractors. *See, e.g., F. D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.,* 417 U.S. 116, 121–22, 94 S.Ct. 2157, 2161, 40 L.Ed.2d 703, 709 (1974); *United States ex rel. Mariana v. Piracci Construction Co., Inc.,* 405 F.Supp. 904, 906 (D.D.C.1975); *United*

*States ex rel. Otis Elevator Co. v. Piracci Construction Co., Inc.,* 405 F.Supp. 908, 909 (D.D.C.1975).

In this case, SEB is seeking recovery for the value of services and materials that it provided. To that extent, its claim falls squarely within the terms of the Act. The possible complication lies in the fact that delay damages, which SEB seeks, represent the value of material and services provided at the particular time they were provided, as opposed to the time the parties initially expected them to be provided. That aspect of the claim, however, does not defeat SEB's action on the bond. As the Supreme Court has stated, the Miller Act is "highly remedial in nature . . . . [and] entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. United States ex rel. Calvin-Tomkin's Co.,* 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944). As we read the Act, a surety is liable for the value of material and services provided at the time they were provided, and hence, the surety is liable for delay damages. This interpretation is supported by cases decided under the Miller Act that allow quantum meruit recovery against a surety. In those cases the value of services rendered is calculated as "the amount for which such services could have been purchased from one in the plaintiff's position *at the time and place the services were rendered.*" *United States ex rel. Coastal Steel Erectors, Inc. v. Algernon Blair, Inc.,* 479 F.2d 638, 641 (4th Cir. 1973) (emphasis added); *United States ex rel.*

---

of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as "contractor":

 \* \* \* \* \* \*

 (2) A payment bond with a surety or sureties satisfactory to [the officer awarding the contract] for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the

contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000, the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.

40 U.S.C. § 270a(a) (1976).

*Building Rentals Corp. v. Western Casualty and Surety Co.*, 498 F.2d 335, 338 (9th Cir. 1974) (quoting *Algernon Blair*). Any other interpretation would undermine the security interest that Congress intended to provide subcontractors on government projects, particularly in times of generally rising prices. *See United States ex rel. Mariana v. Piracci Construction Co., Inc.*, 405 F.Supp. 904 (D.D.C.1975) (arriving at same conclusion); *United States ex rel. Otis Elevator Co. v. Piracci Construction Co., Inc.*, 405 F.Supp. 908 (D.D.C.1975).

In view of the foregoing, we affirm the district court's decision on the Allied Health Building contract, reverse its decision on the parking garage contract, and remand this case to the district court for further proceedings, if necessary, and for findings of fact consistent with this opinion.

*So ordered.*