# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted March 27, 2020      Decided June 19, 2020
                                   Reissued March 1, 2022

No. 19-7010

UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF
AMERICAN CIVIL CONSTRUCTION, LLC,
APPELLEE

v.

HIRANI ENGINEERING & LAND SURVEYING, PC,
APPELLEE

COLONIAL SURETY COMPANY,
APPELLANT

———

Consolidated with 19-7011, 19-7015

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:14-cv-00745)

———

*Michael C. Delaney* and *Laurence Schor* were on the joint
briefs for appellants/cross-appellees.

*Herman M. Braude* was on the briefs for appellee/cross
appellant.

Before: HENDERSON, ROGERS and GARLAND[*], *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*:   American Civil Construction, LLC, ("ACC") the subcontractor on a U.S. Army Corps of Engineers ("Corps") flood protection project, sued the prime contractor, Hirani Engineering & Land Surveying, P.C., ("Hirani") for breach of contract and the providers of Hirani's payment bond, Colonial Surety Company ("Colonial"), under the Miller Act, 40 U.S.C. § 3133, for unpaid labor and materials.  Following a bench trial, the district court entered judgment in favor of ACC and awarded damages against both defendants.   Hirani and Colonial appeal, and ACC cross appeals.   Among the challenges to the judgment, Colonial contends that ACC's lawsuit was untimely under the Miller Act's one-year statute of limitations, pointing to the Corps' April 26 letter terminating Hirani.  But the Federal Acquisition Regulations may render the effective date of Hirani's termination to be later.  Because the district court expressly declined to make some relevant findings, the court will remand the record without deciding whether the accrual of the Miller Act cause of action stems from the termination of the Prime Contract or the Subcontract.  Otherwise, the court affirms the award of restitution against Hirani and defers ruling on other issues raised by the parties.

**I.**

---

[*] Judge Garland participated in the June 19, 2020 disposition of this matter but is no longer a judge on this Court and consequently he did not participate in the disposition of this amended opinion.

In 2010, the Corps awarded Hirani a $3,833,097 contract (the "Prime Contract") to build the "Washington, D.C. and Vicinity, Local Flood Protection Project, 17th Street Closure Structure" (the "Project"). *See U.S. ex rel. Am. Civil Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.*, 345 F. Supp. 3d 11, 22 (D.D.C. 2018) ("*Hirani II*"), ⁋⁋ 4–9. Under the Prime Contract, Hirani was to build a levee flood wall designed to prevent the Potomac River from flooding across the National Mall into downtown Washington, D.C. *Id.* ⁋ 4. The contract anticipated that the Project would be completed within one year, by October 12, 2011. *Id.* ⁋ 10. The contract also required Hirani to obtain a surety bond and it did so from Colonial in the amount of $3,833,097. *Id.* ⁋⁋ 11–12. A few months later, the Corps issued Option 1, which required Hirani to install stone cladding on the levee wall and increased the contract price by $641,369. *Id.* ⁋ 57.

On April 4, 2011, Hirani and ACC entered into a written Subcontract for $2,845,600, pursuant to which ACC would perform the "entire scope of work" of the Project, except for management, quality control, and the installation of some specified metal structures and panels. *Id.* ⁋⁋ 13, 16–19. The Subcontract provided that if a "dispute, controversy, or question" arose about its interpretation, ACC would not stop working until the dispute or controversy was resolved. *Id.* ⁋ 21 (alteration omitted).

The Project was beset by delays. Briefly, delays were attributable to Hirani's procrastination, change orders by the Corps, bad weather, a misalignment between structural and architectural drawings, and work stoppages due to the National Cherry Blossom Festival. *Id.* ⁋⁋ 50–78.

By letter of April 26, 2013, the Corps terminated Hirani for default. *Id.* ⁋ 92. The district court found that Hirani was

at fault for the termination. *Id.* ℙℙ 95–96. The Corps explained that it had "little confidence" that Hirani would finish the Project because Hirani had not taken the steps needed to improve its progress, work had stalled since March 22 "due to subcontractor management and nonpayment issues," Hirani "had not submitted periodic progress schedules" and Hirani had failed to "fulfill commitments to meet milestone deadlines necessary for completing the remainder of the Prime Contract." *Id.* ℙ 93 (alterations omitted). Hirani responded by letter of April 30, 2013, rejecting the termination and requesting a meeting. *Id.* ℙ 99. That same day, Ed Hollander, ACC's field superintendent for the Project, learned that the Corps had terminated Hirani. *Id.* ℙℙ 67, 98. The following day, May 1, Hirani told Hollander that ACC must continue working on the Project because it (Hirani) was fighting the termination. *Id.* ℙ 100. In accordance with Hirani's direction, ACC backfilled an excavated grass area on May 1. *Id.* ℙ 102. The following day, May 2, Hirani directed ACC to immediately stop working on the Project. *Id.* ℙ 104.

The district court expressly declined to find when Hirani received the Corps' termination letter. *Id.* ℙ 92 n.5. It did find that the ACC crew did not work on the Project site on Saturday, April 27 or Sunday, April 28, and heavy rains prevented work on Monday, April 29 and Tuesday, April 30. *Id.* ℙ 97. But the district court did not make a finding of fact whether ACC supplied materials during this time, and it declined to decide if work performed by Ed Hollander or fencing and cleanup work performed by ACC between April 29 and May 1 were compensable under the Subcontract. (Having found that ACC last performed compensable work on May 1, the district court noted it "therefore need not consider [ACC's] alternative arguments that work performed by Ed Hollander on the Project site between April 29, 2013, through May 1, 2013, as well as fencing work and cleanup performed by ACC during that time

period are compensable tasks under the Subcontract and thus occurred within the one-year limitations period.") *Id.* at 40 n.8.

ACC filed suit against Hirani and Colonial on April 29, 2014. In a second amended complaint, ACC requested $2.07 million in damages from each defendant. Colonial counterclaimed, alleging among other things that ACC had breached the Subcontract by failing to perform and caused Colonial to incur substantial costs.

The district court denied Hirani and Colonial's motion for summary judgment. *See U.S. ex rel. Am. Civil Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.*, 263 F. Supp. 3d 99, 101 (D.D.C. 2017) ("*Hirani I*"). Following a five-day bench trial, the district court concluded that Colonial's counterclaims failed because it had not shown that ACC breached the Subcontract. *See Hirani II*, 345 F. Supp. 3d at 39. On ACC's Miller Act claim against Colonial, the district court found that ACC's lawsuit was timely because it was filed within one year of the last compensable work ACC had performed under the Subcontract. *Id.* at 43. And the court found that "Hirani breached the Subcontract by refusing to pay ACC for the work that it performed." *Id.* The court therefore entered judgment on the breach of contract claim in favor of ACC, *id.*, and directed the parties to brief how damages should be calculated, *id.* at 56.

The district court awarded $1,544,957.29 in *quantum meruit* damages on ACC's Miller Act claim against Colonial, plus more than half a million dollars in prejudgment interest. *U.S. ex rel. Am. Civil Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.*, No. 14-CV-00745 (APM), 2019 WL 162019, at *3 (D.D.C. Jan. 10, 2019) ("*Hirani III*"). On ACC's contract claim against Hirani, the district court construed ACC's request for *quantum meruit* damages as seeking restitution because

Hirani had breached a written contract. *Id.* Citing the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT to conclude that performance-based restitution must be limited by expectancy under the contract, the district court awarded $425,319.50 in restitution damages, plus nearly $150,000 in prejudgment interest, inasmuch as ACC had already been paid over $2.5 million for its work. *Id.* at *4–5.

## II.

Hirani and Colonial appeal. In their joint brief, they contend that the district court erred in interpreting the Miller Act, arguing that ACC was not entitled to recover any damages because ACC failed to bring its Miller Act claim within one year after the last day ACC performed compensable work on the Project. They also contend that the district court erred by awarding *quantum meruit* damages because breach of contract damages could be calculated, by inadequately explaining the damages award, by allowing double recovery to ACC, and by admitting documents containing hearsay.

ACC cross appeals, contending that it was entitled to Miller Act damages for the services performed by Ed Hollander, its field superintendent, and to *quantum meruit* damages against Hirani.

## A.

The court reviews *de novo* the district court's denial of summary judgment and its statutory interpretation. *See Validus Reinsurance, Ltd. v. United States*, 786 F.3d 1039, 1042 (D.C. Cir. 2015); *Draim v. Virtual Geosatellite Holdings, Inc.*, 522 F.3d 452, 455 n.3 (D.C. Cir. 2008). "Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard

to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *see also United States v. AT&T, Inc.*, 916 F.3d 1029, 1033 (D.C. Cir. 2019).

In enacting the Miller Act, Congress sought to "place[] subcontractors to government contractors on substantially equal footing with subcontractors to private contractors" by providing them with a security interest. *See U.S. ex rel. Heller Elec. Co. v. William F. Klingensmith, Inc.*, 670 F.2d 1227, 1232 (D.C. Cir. 1982). "The Miller Act, like [its predecessor,] the Heard Act, is highly remedial in nature" and therefore "is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. U.S. ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944). The Miller Act requires government contractors to obtain both a performance bond to protect the government and a payment bond to protect "all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b). The Act also provides that a subcontractor who is not paid by the contractor may file an action on the Payment Bond:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

*Id.* § 3133(b)(1). But Miller Act claims must be brought within a one-year statute of limitations: "An action brought under this subsection must be brought no later than *one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action.*" *Id.* § 3133(b)(4) (emphasis added).

Neither the Supreme Court nor this court have addressed when a Miller Act cause of action accrues. Upon canvassing federal district and appellate court cases, the district court observed that the "courts have taken three approaches in determining when the statute of limitations begins to run on a claim under the Miller Act." *Hirani I*, 263 F. Supp. 3d at 109. The majority of courts had held that only labor and materials furnished for the original contract (as opposed to corrective or repair work performed after final inspection) were "labor" or "materials" for purposes of the statute of limitations. *Id.* at 109–10. Other courts had held that the statute of limitations began to run when the contract was substantially completed. *Id.* at 110. And a third group of courts had "applied a multi-factor analysis" to determine when the statute of limitations began to run. *Id.* This court need not resolve the Miller Act issue at this time.

The district court, considering the approaches in light of the text of the Miller Act and its broad remedial purpose, concluded that in order to avoid engaging in a "subjective line-drawing exercise," it would "simply look to the contract to determine" the tasks for which "the parties agreed the subcontractor would be compensated, then determine the last date on which the subcontractor supplied materials or labor for one of those tasks." *Id.* at 110–11 (citing *U.S. ex rel. GE Supply v. C & G Enters., Inc.*, 212 F.3d 14, 17–18 (1st Cir. 2000)). The district court rejected Colonial's proposed interpretation, under which the last labor performed or

materials supplied before the April 26 date of the Corps' termination letter triggered the statute of limitations. *Id.* at 111–12. The court reasoned that the "relevant contract" under § 3133(b)(1) was "the subcontract — the contract that obligated the prime contractor to secure a bond under Section 3131." *Id.* at 111. Upon reviewing conflicting evidence and making credibility determinations, the court found that ACC last worked on the Project on May 1, 2013. *Hirani II*, 345 F. Supp. 3d at 31, ¶¶ 101–02. Therefore, ACC's Miller Act claim was timely because it was filed on April 29, 2014, which was within a year of when ACC last furnished labor and materials for the Project. *Id.* at 43.

**B.**

On appeal, Colonial renews its position, contending that the district court misinterpreted when the Miller Act's statute of limitations is triggered. Because the one year limitations period begins to run on the last day that the subcontractor carried out work provided for in the bonded contract, Colonial maintains that cannot be after the bonded contract (here, the Prime Contract) has been terminated and so ACC's suit was untimely. In Colonial's view, ACC's last day of work was April 26, 2013, the day Colonial asserts that the Corps terminated the Prime Contract. For its part, ACC acknowledges, but offers nothing to defend, the district court's interpretation of the Miller Act. Rather than explaining how it thinks the statute should be interpreted, ACC contends only that Colonial's position is unsupported, relying primarily on the factual argument that the Prime Contract was not terminated on April 26.

"The statute of limitations is an affirmative defense that [a] defendant must prove." *Firestone v. Firestone*, 76 F.3d 1205, 1210 (D.C. Cir. 1996). Here, even assuming for the sake

of argument that Colonial's interpretation of when the Miller Act claim accrues is correct, Colonial has not carried its burden to prove that the last day ACC performed labor or supplied materials under the Prime Contract was prior to April 29, 2013. Contrary to Colonial's assertion, it is far from "undisputed that . . . the Government terminated the Prime Contract on April 26, 2013." *See* Appellants' Br. at 26. Although the Corps' termination letter was indeed dated April 26, that is not the end of the inquiry.

The Federal Acquisition Regulations require that the government's notice of termination include the "effective date of termination." 48 C.F.R. § 49.102(a)(2). The Corps' termination purported to be "effective immediately." *See Hirani I*, 263 F. Supp. 3d at 106. The applicable regulations provide, however, that "[i]f the contractor receives the termination notice after the date fixed for termination, then the effective date of termination means the date the contractor receives the notice." 48 C.F.R. § 2.101. The district court expressly declined to find when Hirani received the Corps' termination letter. *See Hirani II*, 345 F. Supp. 3d at 30, ℙ 92 n.5. Not until April 30 did Hirani attempt to reject the Corps' termination by letter or ACC learn through its field superintendent Hollander that Hirani been terminated. Thus, the record is consistent with Hirani having received the termination letter — and hence the Prime Contract being terminated — on any of the five days spanning April 26 to 30.

The court need not resolve the disagreement over when ACC's Miller Act claim accrued because, depending on further factual findings by the district court upon remand, "[i]f we do not decide it now, we may never need to." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996); *cf. VanderKam v. VanderKam*, 776 F.3d 883, 888–89 (D.C. Cir. 2015). For instance, if Hirani received the Corps'

termination letter of Friday, April 26, 2013, on Monday or Tuesday, April 29 or 30, and ACC furnished labor or materials on those days, then ACC's lawsuit (which was filed on April 29 of the following year) is timely regardless whether the Miller Act's statute of limitations is tied to the Prime Contract or the Subcontract.  On the other hand, if Hirani received the termination letter on April 26, 27, or 28, then the interpretation of the Miller Act will determine whether ACC's suit was timely.  Given that timeliness may turn on the unresolved factual questions of when the Prime Contract was terminated and whether ACC performed labor or supplied materials on that day, the court need not reach a novel issue of statutory interpretation.  Rather, it suffices to remand the record to the district court for additional fact-finding, where Hirani and Colonial, as proponents of the statute of limitations defense, will bear the burden of showing that Hirani received the termination letter before Monday, April 29 or that ACC performed no labor and supplied no materials on April 29 and 30.

Deferring a decision on the statutory question is particularly appropriate given the lack of helpful authority cited by the parties.  Colonial argues that *United States ex rel. T.M.S. Mechanical Contractors, Inc. v. Millers Mutual Fire Insurance Co. of Texas*, 942 F.2d 946, 953 (5th Cir. 1991), establishes that a subcontractor cannot recover on the payment bond for work performed after the government terminates the prime contract.  But the statute of limitations was not at issue in that case; instead, that case concerned whether the subcontractor could recover on the payment bond for costs it incurred due to the termination.  *See id.*  In addition, Colonial relies upon *United States ex rel. American Bank v. C.I.T. Construction Inc. of Texas*, 944 F.2d 253, 256 (5th Cir. 1991), for the proposition that the Miller Act cause of action accrued when the prime contract was terminated. But in that case, unlike here, the

government had not terminated the prime contract, and thus the discussion of the statute of limitations is dictum having little persuasive value. *See id.* Furthermore, in a case not cited by any party, the Ninth Circuit held that the statute of limitations was not triggered until the prime contractor terminated the agreement with its subcontractor. *See U.S. ex rel. Pippin v. J.R. Youngdale Constr. Co.*, 923 F.2d 146, 150 (9th Cir. 1991). In sum, the authority that the parties have presented to the court is of little aid in resolving a novel statutory question.

Therefore, the court remands the record to the district court to make findings of fact as to when the Prime Contract was terminated and whether ACC performed labor or supplied material on April 29 and/or April 30. In the event that Colonial and Hirani cannot meet their burden to show that ACC's Miller Act claim was untimely, then this court can resolve the parties' other Miller Act contentions: those by Hirani and Colonial that *quantum meruit* damages were improper, that ACC obtained double recovery, and that admitting documents containing hearsay was an abuse of discretion, and that by ACC that Ed Hollander's services were compensable. To the contrary, if Hirani and Colonial show that termination occurred before April 29 or that ACC performed no labor or supplied no material on April 29 or 30, the court can then address the Miller Act statute of limitations issue.

## III.

On cross appeal, ACC contends that it was entitled to *quantum meruit* relief totaling more than $2 million against Hirani, instead of the restitution damages that the district court awarded. The court affirms the award of restitution damages to compensate ACC for the services it provided to Hirani.

Damage awards are "findings of fact governed by Federal Rule of Civil Procedure 52(a), which will not be disturbed unless clearly erroneous." *Bucheit v. Palestine Liberation Org.*, 388 F.3d 346, 350 (D.C. Cir. 2004) (internal quotations omitted). That said, "an appellate court has the 'power to correct errors of law, including those that may infect a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law.'" *United States v. Castle*, 825 F.3d 625, 635 (D.C. Cir. 2016) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 501 (1984)).

The parties and the district court assumed that District of Columbia law applies to ACC's breach of contract cause of action against Hirani, as will this court. *Hirani III*, 2019 WL 162019, at *3 n.3; *see also Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 147 (D.C. Cir. 1997). Three terms, as defined by D.C. law, are pertinent: *quantum meruit*, unjust enrichment, and restitution. First, "[q]uantum meruit may refer to either an implied contractual or a quasi-contractual duty requiring compensation for services rendered." *TVL Assocs. v. A & M Constr. Corp.*, 474 A.2d 156, 159 (D.C. 1984). A plaintiff's "request for quantum meruit . . . is a measure of damages and not a legal theory of recovery." *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 176 (D.C. 1996) (internal quotation omitted). Second, "[u]njust enrichment occurs when a person retains a benefit . . . which in justice and equity belongs to another." *Harrington v. Trotman*, 983 A.2d 342, 346 (D.C. 2009) (quoting *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63–64 (D.C. 2005)). Unjust enrichment is an equitable claim that typically lies when there is not a valid contract between the parties. *See Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016); *see also In re APA Assessment Fee Litig.*, 766 F.3d 39, 45–46 (D.C. Cir. 2014). Third, "[a]lthough the phrases restitution

and *quantum meruit* are sometimes used interchangeably in regard to the measure of recovery, since both refer to unjust enrichment, restitution is properly limited to recovery where there is an express contract." *Lee v. Foote*, 481 A.2d 484, 486 n.4 (D.C. 1984). "[A]n action for restitution is an alternative remedy to an action for damages when there has been a repudiation or material breach of the contract." *Ingber v. Ross*, 479 A.2d 1256, 1263 (D.C. 1984). Thus, "[r]estitution is available [under D.C. law] for partial performance by a plaintiff of services under an express contract which has been breached by a defendant." *Lee*, 481 A.2d at 486; *see also Harrington*, 983 A.2d at 347–48.

ACC contends that the district court "ignored the election made by ACC to seek restitution (quantum meruit) based on the reasonable value of the performance without regard to the limitations of the contract." Appellee's Br. at 67. It relies on *W.F. Magann Corp. v. Diamond Manufacturing Co.*, 775 F.2d 1202 (4th Cir. 1985), several articles written by its own counsel, and, in reply, *Blake Construction Co. v. C.J. Coakley Co.*, 431 A.2d 569 (D.C. 1981). ACC does not explain why the ability of the subcontractor in *W.F. Magann Corp.* to recover in *quantum meruit* on its Miller Act claim provides a basis to displace the district court's conclusion that D.C. law does not allow ACC to recover in *quantum meruit* on its contract claim. And in *Blake*, the D.C. Court of Appeals allowed the subcontractor to recover damages for delay despite a contractual clause prohibiting such damages because the delays were due to the contractor's "active interference" with the contract, although the court declined to distinguish between contract and *quantum meruit* theories of recovery because the result was the same. *Blake Constr. Co.*, 431 A.2d at 578–79, 579 n.8. Here, by contrast, ACC points to no finding of active interference and, more fundamentally, the theories lead to different amounts of damages. In short, ACC has not provided

the court with any basis to deviate from the principle of D.C. law that restitution, not *quantum meruit*, is the proper remedy where there is an express contract between the parties. *See Lee*, 481 A.2d at 486. The court therefore affirms the district court's award of contract damages against Hirani.

Accordingly, the court remands the record to the district court for additional fact-finding on ACC's Miller Act claim against Colonial, affirms the restitution damages award against Hirani on ACC's contract claim, and defers addressing other issues raised by the parties.