# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 13, 2022          Decided January 31, 2023

No. 19-7010

UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF
AMERICAN CIVIL CONSTRUCTION, LLC,
APPELLEE

v.

HIRANI ENGINEERING & LAND SURVEYING, PC,
APPELLEE

COLONIAL SURETY COMPANY,
APPELLANT

———

Consolidated with 19-7011, 19-7015

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:14-cv-00745)

———

*Michael C. Delaney* argued the cause for appellants/cross-appellees. With him on the supplemental brief were *Laurence Schor* and *Karen L. Dowd*.

2

*Herman M. Braude* argued the cause and filed the supplemental brief for appellee/cross-appellant.

Before: SRINIVASAN, *Chief Judge,* HENDERSON, *Circuit Judge*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by Senior Circuit Judge ROGERS.

ROGERS, *Senior Circuit Judge*:   This case returns to the court after a limited remand of the record to the district court. *United States ex rel. Am. Civ. Constr., LLC v. Hirani Eng'g & Land Surveying, PC*, 26 F.4th 952, 954 (D.C. Cir. 2022) ("*Hirani IV*"), *amending* 962 F.3d 587 (D.C. Cir. 2020). Upon consideration of the original and the supplemental briefs, and the post-remand oral argument, there remain three issues before this court: The surety ("Colonial") for the prime contractor ("Hirani") challenges the district court's award of *quantum meruit* damages on the Miller Act claim of the subcontractor ("ACC"), and the district court's award as double recovery for the subcontractor.   The subcontractor continues to challenge the district court's denial of recovery under the Miller Act for the reasonable value of its superintendent's services at the job site.   For the following reasons, the court affirms the district court's judgment except to remand for the district court to expressly address whether there would be impermissible double recovery for the subcontractor.

**I.**

The surety has withdrawn the statute of limitations defense.  Colonial Suppl. Br. 1 (Aug. 4, 2022).  It has also withdrawn the hearsay objections to daily reports on when the subcontractor last furnished labor or materials. Oral Arg.

Recording 2:10-2:17 (Oct. 13, 2022). Therefore, only two of its contentions remain before the court.

**A.**

First, the surety contends that the district court erred as a matter of law in granting the subcontractor *quantum meruit* recovery on its Miller Act claim where there is an express contract from which damages could be calculated and the award exceeded that against the prime contractor. Colonial Br. 28-37 (July 19, 2019); Colonial Suppl. Br. 1-5 (Aug. 4, 2022). But the surety has likely misread this court's denial of *quantum meruit* on the subcontractor's D.C. breach-of-contract claim against the prime contractor to preclude the surety's liability on a *quantum meruit* theory under the Miller Act. *Hirani IV*, 26 F.4th at 960; Colonial Suppl. Br. 2 (Aug. 4, 2022). This court affirmed the district court's grant of "restitution," which it had viewed to reflect the subcontractor's claim. *Hirani IV*, 26 F.4th at 960. Even if D.C. contract law caps the subcontractor's restitution recovery against the prime contractor to expectation damages and does not permit recovery in *quantum meruit* where there is an express contract, no such limit applies to the claim against the surety under the Miller Act.

The scope of Miller Act remedies is a matter of federal law. *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 127 (1974). In *United States ex rel. Heller Electric Co. v. William F. Klingensmith, Inc.*, 670 F.2d 1227 (D.C. Cir. 1982), a subcontractor sought to recover delay damages under the Miller Act from its prime contractor's surety. The "possible complication" of the subcontractor's claim was that delay damages "represent the value of material and services provided at the particular time they were provided, as opposed to the time the parties initially expected them to be

provided" as reflected by the contract price. *Id.* at 1232. Relying on "cases decided under the Miller Act that allow *quantum meruit* recovery against a surety," *id.*, the court explained that "[a]ny other interpretation would undermine the security interest that Congress intended to provide subcontractors on government projects, particularly in times of generally rising prices," *id.* at 1233. Indeed, in *Continental Casualty Co. v. Allsop Lumber Co.*, 336 F.2d 445, 455 (8th Cir. 1964), *see* Colonial Br. 33 (July 19, 2019), that court recognized the permissibility of recovery under the Miller Act in *quantum meruit* where there was a breach of an express contract. *See also United States ex rel. Susi Contracting Co. v. Zara Contracting Co.*, 146 F.2d 606, 610 (2d Cir. 1944).

The Supreme Court has interpreted the Miller Act broadly in view of its "highly remedial" nature. *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944). The Court explained that the Act is "entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Id.* Other courts have heeded that instruction, *see Glassell-Taylor Co. v. Magnolia Petroleum Co.*, 153 F.2d 527, 529-30 (5th Cir. 1946) (collecting cases), and this court will too.

Second, this court need not resolve the surety's contention that the district court awarded the subcontractor double recovery. "If we do not decide it now, we may never need to." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996).

According to the subcontractor, it sought damages it could not recover against the prime contractor because such recovery on its D.C. breach-of-contract claim was limited by contract expectancy, while its *quantum meruit* claim for recovery

against the surety arises under the Miller Act and includes work beyond the subcontract. It relies on *Heller Electric Co.*, 670 F.2d at 1232-33. In that case, this court cited *United States ex rel. Mariana v. Piracci Constr. Co.*, 405 F. Supp. 904 (D.D.C. 1975), and *United States ex rel. Otis Elevator Co. v. Piracci Constr. Co.*, 405 F. Supp. 908 (D.D.C. 1975), in awarding the subcontractor the value of services and materials that it provided including delay damages representing the value of material and services which were different than what the parties initially expected. *Heller Electric Co.*, 670 F.2d at 1232. Here the district court too relied on *Heller Electric*'s holding. *United States ex rel. Am. Civ. Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.*, 263 F. Supp. 3d 99, 115 (D.D.C. 2017) ("*Hirani I*").

The subcontractor had sought the same amount of damages against the surety and its principal, the prime contractor, based on *quantum meruit* recovery, arguing that because of "the piecemeal adverse uncontemplated performance of 25 months versus the eight months the parties originally contemplated, the judgment should be the same against both defendants, although the judgment could only be collected once." ACC Br. 74 (Oct. 11, 2019). Moreover, according to the subcontractor, "there would be no double recovery as Hirani is probably insolvent and judgment proof [having] . . . assigned all of its assets under a standard indemnity agreement to Colonial." ACC Reply Br. 1 n.1 (Feb. 11, 2020).

The district court acknowledged that the subcontractor's Miller Act claim seeks both "monetary compensation for work performed beyond what the Subcontract called for" and "also . . . the unpaid amounts that [it] claims it is owed for work performed under the Subcontract," which it described as "contract damages." *Hirani I*, 263 F. Supp. 3d at 115 n.7. The

district court did not indicate whether any (or what part) of the Miller Act award against the surety is only for work performed beyond that specified in the subcontract. On remand the district court can clarify whether there would be any impermissible double recovery in light of the subcontractor's revision, if any, to its damages calculation of December 10, 2018.

**B.**

The subcontractor renews its contention that the district court erred in denying recovery for its superintendent's on-site labor. ACC Br. 64-66 (Oct. 11, 2019); ACC Reply Br. 2-9 (Feb. 11, 2020).

Miller Act payment bonds cover "[e]very person that has furnished labor or material in carrying out work provided for in a contract." 40 U.S.C. § 3133(b)(1). The Act does not define the term "labor," and the issue is one of first impression for this court. The district court and the parties agree that "labor" can include "skilled professional work which involves actual superintending, supervision, or inspection at the job site." Colonial Reply Br. 26 (Dec. 18, 2019) (quoting *United States ex rel. Olson v. W.H. Cates Constr. Co.*, 972 F.2d 987, 990 (8th Cir. 1992)); *see United States ex rel. Am. Civ. Constr., LLC v. Hirani Eng'g & Land Surveying, P.C.*, 345 F. Supp. 3d 11, 50 (D.D.C. 2018) ("*Hirani II*"); ACC Br. 66 (Oct. 11, 2019). The subcontractor maintains that this is the end of the inquiry: "[L]abor" includes work by "an actual superintendent or supervis[or] at the job site, and excludes off-site professionals such as an architect or engineer." ACC Br. 66 (Oct. 11, 2019). The surety challenged the notion that mere on-site presence constituted "labor" by a superintendent. Colonial Reply Br. 26 (Dec. 18, 2019). The district court essentially agreed, ruling that "the on-site supervisory work of a project manager falls

within the purview of the Miller Act if such a superintendent did *some physical labor* at the job site." *Hirani II*, 345 F. Supp. 3d at 50 (quoting *W.H. Cates*, 972 F.2d at 991).

Both the subcontract and government quality control standards for the Project required the preparation of daily reports certifying the work's progress. Subcontract at ¶ 16.1 (Suppl. App. 2402 (Oct. 11, 2019)); Contractor Quality Control Plan at ¶ 7.2 (Suppl. App. 2494-95 (Oct. 11, 2019)). The daily form submitted by the subcontractor pursuant to the subcontract required "verif[ication]" of the "manpower and equipment . . . present at [the] site" and "confirm[ation of] . . . the work performed at [the] site." *See, e.g.*, Daily Manpower, Equipment, and Field Overhead Tracking Form for Field Verification (Feb. 21, 2013) ("Form"). The subcontractor explained that because "construction activities have to be continuously supervised, inspected and ultimately certified as being in conformance with the contract requirements," ACC Reply Br. 7-8 (Feb. 11, 2020), its superintendent had to be on-site to account for, among other things, hours worked by crew members, usage and standby hours for each piece of equipment, materials delivered, weather throughout the day, and all work performed, *see* Form. These on-site responsibilities reflected the government's quality control standards, under which the superintendent as "the most senior site manager at the project, is responsible for the overall construction activities at the site . . . includ[ing] all quality, workmanship, and production of crews and equipment." Contractor Quality Control Plan at ¶ 4.4 (Suppl. App. 2478-79 (Oct. 11, 2019)). The superintendent is therefore required to "maintain a physical presence at the project site at all times" and "may only be absent from the project for short periods of time." *Id*. In addition, the superintendent supervised the traffic flow along 17th Street adjacent to the work site. Trial Tr. at 102:23-103:3 (Mar. 7, 2018 AM). At trial, the subcontractor

also presented expert testimony that the reasonable value of the superintendent's services was $3,000 per week, for a total of $306,000 over the course of the project. *See id.* at 100:9-13; ACC's Proposed Findings of Fact & Conclusions of Law 58, ECF No. 82 (Apr. 13, 2018).

The surety challenged this evidence, asserting that the subcontractor offered nothing to show that the superintendent performed "labor" within the meaning of the Miller Act, Colonial's Proposed Findings of Fact & Conclusions of Law 51-54, ECF No. 83 (Apr. 13, 2018), and that the subcontractor's expert's calculation of the value of the superintendent's services was "grossly unreasonable," exceeding weekly rates for superintendents across the United States, *id.* at 53. The district court noted the objection to the reasonableness of the weekly rate, *Hirani II*, 345 F. Supp. 3d at 49, but in denying recovery relied on the absence of evidence the superintendent performed physical on-site labor, *id.* at 50.

Other courts have taken into account the nature of a superintendent's oversight responsibilities in concluding that a superintendent's cost was compensable "labor." Referencing the trend in other courts, the Eighth Circuit concluded that "the on-site supervisory work of a project manager falls within the purview of the Miller Act if such a superintendent did some physical labor at the job site *or might have been called upon to do some on-site manual work in the regular course of his job*." *W.H. Cates*, 972 F.2d at 991 (emphasis added); *see id.* at 990-91 (citing cases from the Third, Fourth, Fifth, and Ninth Circuits). That is, "only certain professional supervisory work is covered by the Miller Act, namely, 'skilled professional work which involves actual superintending, supervision, or inspection at the job site.'" *Id.* at 990 (quoting *United States ex rel. Naberhaus-Burke, Inc. v. Butt & Head, Inc.*, 535 F. Supp. 1155, 1160 (S.D. Ohio 1982)). The Eighth Circuit

acknowledged that the term labor generally includes physical rather than professional work but distinguished those professionals who superintend on-site as performing labor. *Id.* (citing *United States ex rel. Farwell, Ozmun, Kirk & Co. v. Shea-Adamson Co.*, 21 F. Supp. 831, 837 (D. Minn. 1937) (relying on state and federal cases)).

Given that the construction work at issue had to be supervised and inspected for conformance with the subcontract and other requirements, such as government quality control standards, the superintendent's on-site supervisory work constitutes "labor" within the meaning of the Miller Act. In *Mining Co. v. Cullins*, 104 U.S. 176 (1881), the Supreme Court interpreted "labor" under a territorial mechanic's lien law to include the work of an on-site superintendent. *Id.* at 177. Such a construction is consonant with the Miller Act's remedial purpose. *MacEvoy*, 322 U.S. at 107.

Accordingly, the court affirms the judgment of the district court in part but reverses and remands in part to allow the district court to determine whether there is any impermissible double recovery and to award the reasonable value of the superintendent's on-site services under the Miller Act.